Pine Grove Manufactured
 Homes, Inc.
Redman Homes, Inc.
River Birch Homes, Inc.
Skyline Corporation
Skyline Homes, Inc.
TCC Clarion Limited
 Partnership
The Commodore
 Corporation
The Hallmark Southwest
 Corporation
The Homark Company, Inc.
Valley Manufactured
 Housing, Inc.
Western Homes
 Corporation

| | 125 | 51 |
| --- | --- | --- |

**Della STAPLES and Billy Staples,
et al., Plaintiffs,**

**v.**

**MERCK & CO., INC., Harvey Resnick,
M.D., and R/D Clinical Research,
Inc., Defendants.**

**No. Civ.A.3:03–CV–0180–M.**

United States District Court,
N.D. Texas,
Dallas Division.

July 1, 2003.

Jeffrey B. Simon, Dana Casselli Fox, Melissa Casey Katz, Peter A. Kraus, Walters & Kraus, Dallas, TX, for Plaintiffs.

Richard L. Josephson, Jim Staley, Baker Botts–Houston, Houston, TX, Earl B. Austin, Baker Botts, Dallas, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

LYNN, District Judge.

A number of cases, separately removed, were consolidated into this case. In each Notice of Removal and/or Amended Notice of Removal, Defendant Merck alleged that jurisdiction is proper in this Court because Plaintiffs fraudulently joined two Texas defendants: Dr. Harvey Resnick, M.D., and R/D Clinical Research, Incorporated (collectively, "Clinical Researchers"). If the Clinical Researchers were not fraudulently joined, then this case is non-removable under 28 U.S.C. § 1441(b). In December 2002, the Plaintiffs filed ten actions in multiple district courts in Dallas County, Texas. The petitions asserted nearly identical claims against Defendants Merck & Co., Inc. ("Merck"), for a variety of causes of action, including negligence, fraud and conspiracy. Plaintiffs specifically named the Clinical Researchers only in the negligence count, but also implicated the Clinical Researchers in the fraud and conspiracy counts.

Merck answered on January 27, 2003. Two days later, Merck removed the suits and then, on February 6, 2003, filed an Amended Notice of Removal to correct a mistake as to the state court where one action was commenced. On February 11, 2003, this Court consolidated all Plaintiffs' actions into the *Staples* action, Civil Action No. 3:03–CV–0180–M, and instructed the parties to file briefs concerning the issue of fraudulent joinder.

The Texas citizenship of the Clinical Researchers would ordinarily defeat removal jurisdiction under 28 U.S.C. § 1441(b). However, Merck contends that this Court may assert its removal jurisdiction because the Plaintiffs fraudulently joined the Clinical Researchers. For the reasons herein stated, this Court finds that the Plaintiffs fraudulently joined the Clinical Researchers. Thus, removal was proper, and this Court has jurisdiction over this action.

### FACTUAL BACKGROUND

In May 1999, Merck received approval from the Federal Drug Administration and began distributing, marketing, and selling VIOXX®, an osteoarthritis and pain-relief drug. Plaintiffs received VIOXX® and now allege that they suffered adverse cardiovascular effects as a result of ingesting the drug. Specifically, the Plaintiffs allege that Merck, through its clinical studies, knew that VIOXX® caused adverse cardiovascular effects. Plaintiffs allege that, rather than disclosing such information, Merck negligently and fraudulently concealed it, instead marketing the drug as safe and effective. Plaintiffs further allege that the Clinical Researchers acted in concert with Merck, choosing not to report the drug's adverse effects despite performing clinical studies during the development stage of VIOXX® that made them aware of possible side effects.

Where fraudulent joinder is alleged in removed cases, the Court must decide all disputed questions of fact and all ambiguities in favor of the non-removing party.[1]

---

1. *Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995); *McCall v. UNUM Life Insurance Company,* 2001 WL 1388013, at *4 (N.D.Tex. Nov.6, 2001) (citing *Dodson v.*

Therefore, the Court must accept as true the fact that the Clinical Researchers' studies showed a pattern of drug-related toxicity, but in light of undisputed critical facts, no viable claims can be pursued by Plaintiffs against the Clinical Researchers. Both parties have supplemented their pleadings with evidence. Merck has substantiated the facts it alleges with affidavits from Dr. Resnick, the Medical Director of R/D Clinical Research, and Dr. Robert E. Silverman, the Senior Director of Regulatory Affairs for Merck Research Laboratories, a division of Merck. Plaintiffs have included documents showing the results of the tests conducted by the Clinical Researchers.

Between 1993 and the present, Merck contracted with the Clinical Researchers to be "Primary Investigators" in six studies of VIOXX®. Customarily, the Clinical Researchers do not design their own clinical studies, but work according to protocols provided by the pharmaceutical companies with which they contract. Merck designed the protocols and provided the instructions via an Investigator's Brochure. The Clinical Researchers conducted each protocol according to Merck's instructions and then reported the results. Merck had Clinical, Medical, and Statistical Monitors who aided in determining what constituted an adverse effect, and sent employees to R/D Clinical Research multiple times to determine whether there was a pattern of drug-related toxicity. Merck did not authorize the Clinical Researchers to report the data to anyone other than Merck. The Clinical Researchers did not participate in the manufacture, composition, labeling, or any other aspect of marketing VIOXX®.

The studies that Merck designed for the Clinical Researchers to conduct were double-blind. Under this method, neither the Clinical Researchers nor the patients knew whether the patients received VIOXX®, a placebo, or a comparator drug. Only Merck had a code which allowed it to match a patient to the treatment he or she was receiving. Consequently, if one of the subjects suffered an adverse effect, the Clinical Researchers had no means of knowing whether the effect was related to VIOXX®. None of the Plaintiffs were subjects of the Clinical Researchers' studies. The Clinical Researchers had no contact with the Plaintiffs prior to this litigation.

The Clinical Researchers were also not the only research company reporting data to Merck. Merck contracted with a number of other research companies. For instance, in one of the six studies in which the Clinical Researchers participated, Merck also contracted with more than 60 other "Primary Investigators" for the same study. In total, the Clinical Researchers screened and submitted data on less than five percent of the patients randomized in the six studies, or 154 out of a total of 3,638. Furthermore, Merck conducted, in all, 23 clinical studies encompassing approximately 28,000 patients; therefore, the Clinical Researchers submitted data on less than 0.6 percent of the patients that Merck evaluated in its development of VIOXX®.

### ANALYTICAL FRAMEWORK AND STANDARD OF REVIEW

▮ Under the concept of fraudulent joinder, "a federal court may assert diversity jurisdiction when a non-diverse defendant has been joined in state court simply to preclude removal."[2] As the moving party, Merck bears the heavy burden of proving that the Plaintiffs fraudulently

---

*Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992)).

**2.** *Sohmer v. American Medical Security, Inc.*, 2002 WL 31323763, at *2 (N.D.Tex. Oct.15, 2002).

joined the Clinical Researchers, by establishing that either (1) the Plaintiffs' statement of the facts is utterly fraudulent, or (2) there is no possibility that the Plaintiffs could establish a cause of action in state court for any of the counts they have pleaded against the Clinical Researchers.[3] Merck based its Notice of Removal on a claim that Plaintiffs would be unable to establish liability against the Clinical Researchers under state law.

■ In evaluating the fraudulent joinder issue, the Court may choose to "pierce the pleadings" and view summary judgment-type evidence.[4] In this case, the parties have offered such evidence. Even while considering the evidence outside the pleadings, the Court should resolve all disputed factual questions and ambiguities in favor of the non-removing party, the Plaintiffs.[5] Additionally, the Court should not allow the additional evidence to support causes of action that the Plaintiffs had not asserted when removal occurred.[6]

The Court does not have to predict whether the Plaintiffs will certainly prevail on the merits against the Clinical Researchers, or even if they will likely do so.[7] Instead, the Court must decide whether Plaintiffs might *possibly* prevail. Merck must, therefore, show that there is no possibility that the Plaintiffs would be able to establish a valid cause of action against the

Clinical Researchers under Texas law.[8] In so determining, the Court must decide if there is any *arguably reasonable basis* on which state law will potentially allow recovery against the Clinical ·Researchers.[9] The Fifth Circuit has bluntly rejected the contention that a merely theoretical possibility of recovery will suffice to preclude removal.[10] Although the Fifth Circuit has not drawn a bright-line distinction between a reasonable possibility and a theoretical one, it has held that, when plaintiffs make general allegations and fail to support them with specific, underlying facts, they have not established a reasonable basis for the Court to predict that relief may be granted.[11]

Accordingly, the issue in determining the proper forum is whether Merck has proven that there is no reasonable possibility that Texas law would hold the Clinical Researchers liable under at least one of the claims that the Plaintiffs have pleaded.

### ANALYSIS

### A. Can Plaintiffs Possibly Prevail on Their Theories of Negligence?

### 1. Ordinary and Products Liability Negligence

Plaintiffs cannot prevail on an "ordinary" negligence theory against the Clinical Researchers. To prevail on this theory

---

3. *Burden,* 60 F.3d at 217.

4. *Sohmer,* 2002 WL 31323763, at *2.

5. *McCall,* 2001 WL 1388013, at *4.

6. *Sohmer,* 2002 WL 31323763, at *2.

7. *McCall,* 2001 WL 1388013, at *4.

8. *Id.*

9. *Badon v. R.J.R. Nabisco, Inc.,* 224 F.3d 382, 390 (5th Cir.2000).

10. *Badon v. R.J. R. Nabisco, Inc.,* 224 F.3d 382, 386 n. 4 (5th Cir.2000); *Griggs v. State Farm Lloyds,* 181 F.3d 694, 701 (5th Cir.

1999) ("While the burden of demonstrating fraudulent joinder is a heavy one, we have never held that a particular plaintiff might possibly establish liability by the mere hypothetical possibility that such an action could exist ... whether the plaintiff has established a valid state law cause of action depends upon ... the factual fit between the plaintiff's allegations and the pleaded theory of recovery.")

11. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329; *Badon,* 224 F.3d at 391–392.

in Texas, Plaintiffs must establish that the Clinical Researchers: (1) owed a legal duty to Plaintiffs; (2) breached that duty; and (3) proximately caused the Plaintiffs damages.[12] A prerequisite to tort liability is the existence of a legally cognizable duty.[13] If the Court finds that the Clinical Researchers had no duty to Plaintiffs, it does not need to inquire about the remaining elements.[14]

### a. Did the Clinical Researchers Have any Duty to Warn About the Potentially Harmful Effects of VIOXX®?

■ The Clinical Researchers owed the Plaintiffs no duty of reasonable care. In Texas, generally, independent laboratories have no duty of reasonable care toward parties with which they did not contract.[15] A possible, but narrow, exception would be if the laboratory negligently created a "dangerous situation." [16] In determining whether there is a duty, the Court must focus exclusively on the Plaintiffs and the Clinical Researchers, and disregard either party's relationship with Merck.[17]

In *SmithKline Beecham Corp. v. Doe,*[18] defendant SmithKline, an independent laboratory under contract with plaintiff's prospective employer, The Quaker Oats Company ("Quaker"), performed a drug test on plaintiff. SmithKline Beecham Corp. ("SmithKline") did not warn plaintiff that there were ways to register a "false positive" (i.e. eating poppy seed muffins) and, when plaintiff's test registered such a result, she sued SmithKline for failing to warn her of that possibility. The Supreme Court of Texas refused to impose such a duty upon SmithKline, stating that "the duty that Doe seeks would charge SmithKline with responsibility that belongs to its clients," and that "SmithKline should be allowed to perform only the service it chose to offer and Quaker chose to procure." [19] The Court also stated that SmithKline could not be said to have negligently "created" the situation by not warning plaintiff because it did not create or control the use of its test results, but merely reported the results back to the employer.[20]

The Fifth Circuit followed *SmithKline Beecham Corp.* in *Willis v. Roche Biomedical Labs, Inc.* In *Willis,* the employer contracted defendant Roche Biomedical Laboratories ("Roche") to conduct "the screening and testing of urine samples provided by [employer] in accordance with strict protocol procedures in the contract." [21] Plaintiff brought a negligence action against Roche when his drug test registered a "false positive." [22] The Fifth Circuit, in holding that Roche did not owe the plaintiff a duty of reasonable care, focused on the relationship between Roche and the plaintiff, independent of either

12. *Greater Houston Transportation Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990).

13. *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex. 1993).

14. *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 730 (5th Cir.2002).

15. *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 354 (Tex.1995).

16. *SmithKline Beecham Corp.,* 903 S.W.2d at 353 (finding laboratory that generated and reported data, but did not create or control its use, did not create a dangerous condition).

17. *Willis v. Roche Biomedical Labs.,* 61 F.3d 313, 316 (5th Cir.1995); *SmithKline Beecham Corp.,* 903 S.W.2d at 353.

18. *SmithKline Beecham Corp.,* 903 S.W.2d at 348.

19. *Id.* at 354.

20. *Id.* at 353.

21. *Willis,* 61 F.3d at 314.

22. *Id.*

party's connection with the employer.[23] Because the parties had no real relationship other than their mutual connection to the employer, the Fifth Circuit ruled in favor of Roche.[24] While the facts in *SmithKline Beecham Corp.* and *Willis* are not entirely analogous to this case, those cases stand for the general proposition that an independent laboratory's duties do not go beyond those it contracted to perform.

The Clinical Researchers' relationship to the Plaintiffs is even more attenuated than the relationships in *SmithKline Beecham Corp.* and *Willis*. In those cases, the defendants performed the tests on the plaintiffs.[25] The Plaintiffs in this case were not among the subjects the Clinical Researchers tested. The Clinical Researchers did not even know the Plaintiffs existed prior to this litigation. Thus, it follows that Texas negligence law would not impose a duty on the Clinical Researchers to the Plaintiffs, persons with whom they had no contact whatsoever. Because Merck, and not the Clinical Researchers, "created and controlled the use of the data," any duty to know that VIOXX® presented health risks to those who ingested it resides with Merck, not the Clinical Researchers.[26]

Plaintiffs' claim that the Clinical Researchers owed them a duty under a products liability theory of negligence must also fail. Unless the Clinical Researchers played a role in the design, manufacture, or sale of the product, the Clinical Researchers owed no duty to the Plaintiffs.[27] Plaintiffs claim that by collecting data, the Clinical Researchers participated in the marketing of VIOXX®. In so contending, Plaintiffs misinterpret the role the Clinical Researchers played. The Clinical Researchers made no representations to the public or to Merck about the safety of VIOXX®. Merck designed the studies and did not authorize the Clinical Researchers to draw conclusions based on the data or to report the data to anyone else. Also, the Clinical Researchers did not know which subjects had taken VIOXX®. Finally, the Clinical Researchers administered a minute fraction of the overall studies Merck supervised. Therefore, the Clinical Researchers were simply not in a position to make any representations whatsoever about the safety of VIOXX®. The Court, thus, cannot impose a duty on the Clinical Researchers based on their role as "Primary Investigators."

In light of these facts, the Clinical Researchers had no duty to warn Plaintiffs of the safety hazards of VIOXX®. Therefore, Plaintiffs can succeed on neither an "ordinary" negligence claim nor on a products liability claim predicated on negligence.

### b. Did the Clinical Researchers' Conduct "Cause" Plaintiffs' Injuries?

Even assuming, *arguendo,* that the Clinical Researchers had a duty of reasonable care to the Plaintiffs, Plaintiffs cannot demonstrate that the Clinical Researchers' breach of such duty proximately or actually caused damages to Plaintiffs. First, the Clinical Researchers' actions are too remote from Plaintiffs' injuries to have proximately caused the alleged injuries.[28]

---

23. *Id.* at 316.

24. *Id.*

25. *Willis,* 61 F.3d at 314; *SmithKline Beecham Corp.,* 903 S.W.2d at 348.

26. *See SmithKline Beecham Corp.,* 903 S.W.2d at 353–54.

27. *Firestone Steel Products Co. v. Barajas,* 927 S.W.2d 608, 615 (Tex.1996).

28. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995) ("At some point in the causal chain, the defendant's conduct may be too remotely connected with plaintiff's injury to constitute legal causation.").

There are far too many intervening actors and events between the clinical studies and the Plaintiffs' injuries. Merck received the data and drew its own conclusions. The FDA then approved VIOXX®, giving Merck permission to manufacture and distribute it. Once Merck put VIOXX® into the stream of commerce, it did not reach the Plaintiffs until Plaintiffs' physicians prescribed the drug.

The Clinical Researchers are no more responsible than any of the scores of other research companies with which Merck contracted. This Court would be accepting a standard of unlimited liability if it held that *any* person who suffers an injury as a result of ingesting VIOXX® could recover from a laboratory that merely collected and accurately reported data on a small percentage of the subjects tested in a double blind protocol. Texas law rejects such unlimited liability.[29]

Plaintiffs also cannot point to any alleged negligent act by the Clinical Researchers that actually caused their injuries. The Clinical Researchers were one of scores of research companies, and administered only a few of the many tests Merck conducted on VIOXX®. Consequently, the Plaintiffs cannot establish that it was the failure to warn of the test results on data that the Clinical Researchers collected that caused the Plaintiffs to ingest VIOXX® and suffer their injuries. One cannot conclude that "but for" the Clinical Researchers not revealing to the public the small amount of inconclusive data they had, Plaintiffs' injuries would not have occurred.

In conclusion, the Court finds that Plaintiffs cannot establish that the Clinical Researchers' conduct proximately or actually caused the Plaintiffs' injuries. This further supports the Court's earlier conclusion that Plaintiffs cannot possibly prevail on an "ordinary" negligence claim.

**2. Negligent Misrepresentation**

Plaintiffs also cannot sustain a claim of negligent misrepresentation against the Clinical Researchers. In *EDCO Production, Inc. v. Hernandez,* Texas recognized a cause of action for negligent misrepresentation where the plaintiff has suffered physical harm, as provided for in the Restatement (Second) of Torts.[30] Thus, in Texas,

(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by another in reasonable reliance upon such information, where such harm results

(a) to the other, or

(b) to such third persons as the actor should expect to be put in peril by the action taken.

(2) Such negligence may consist of failure to exercise reasonable care:

(a) in ascertaining the accuracy of the information, or

(b) in the manner in which it was communicated.

■ Plaintiffs' petitions are devoid of specific facts showing that the Clinical Researchers misrepresented the safety of VIOXX® or that they concealed negative information. Instead, the Petition merely states that "Defendants" made such misrepresentations and omissions.[31] In gen-

---

**29.** *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.,* 51 S.W.3d 573, 580 (Tex.2001).

**30.** 794 S.W.2d 69, 76–77 (Tex.App.—San Antonio 1990, writ denied).

**31.** *Staples* Petition at 9 ("Defendants misrepresented to Plaintiffs and health care industry the safety and effectiveness of VIOXX® and/or fraudulently, intentionally, and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of VIOXX®.").

eral, Plaintiffs cannot assert merely speculative and conclusory allegations in order to sustain a valid negligent misrepresentation claim.[32] Plaintiffs do not allege that the Clinical Researchers made any misrepresentations to them, and rightfully so, since the Clinical Researchers never came into contact with Plaintiffs and disclosed the data they gathered only to Merck.

Nevertheless, Plaintiffs allege they have a valid cause of action under Section 311(1)(b) of the Restatement (Second) of Torts, *supra*. Specifically, Plaintiffs claim that Illustration No. 7 to Section 311 is analogous to this case. Illustration No. 7 states:

> The A boiler insurance company undertakes as part of its services to inspect the boiler of B. It issues a certificate that the boiler is in good condition for use. In reliance upon this certificate, B uses the boiler. The boiler bursts owing to a defect which a reasonably careful inspection would have disclosed. Explosion of the boiler wrecks the adjacent building of C and causes bodily harm to him. The A company is subject to liability to C for bodily harm and the wrecking of his building caused by the explosion of the boiler.

However, Plaintiffs (represented by "C" in the illustration) have not alleged that the Clinical Researchers (represented by A) provided any false information regarding the safety of VIOXX® to Merck (represented by B). Nor do the pleadings and submitted evidence show that the Clinical Researchers negligently gathered and reported any of the data they acquired by way of their studies.

Even accepting Plaintiffs' assertion that the clinical studies demonstrated a pattern of drug-related toxicity, the record establishes that not only did the Clinical Researchers not misrepresent the safety of VIOXX®, but they could not possibly have done so. Because of the Clinical Researchers' restricted role, the studies' double-blind format, and the Clinical Researchers' few testing subjects, the Clinical Researchers could not have possibly drawn any conclusions about the safety of VIOXX® that they could then misrepresent to Merck. Thus, any claim for negligent misrepresentation fails as a matter of law.

### 3. Negligent Undertaking

■ Plaintiffs alternatively claim that even if the Clinical Researchers did not initially have a duty to the plaintiffs, they "undertook" a duty to exercise reasonable care in performing their studies. That claim fails as well. Under Texas law, to prevail on a negligent undertaking claim against the Clinical Researchers, Plaintiffs must demonstrate that the Clinical Researchers: (1) undertook to perform services, gratuitously · or for compensation, that they knew, or should have known, were necessary for the Plaintiffs' protection; (2) failed to exercise reasonable care in performing those services; and (3) performed those services in a manner that increased the Plaintiffs' risk of harm.[33] In order to state a valid claim, Plaintiffs must allege specific facts establishing that the Clinical Researchers assumed a duty.[34] Plaintiffs may not satisfy the burden simply by making a conclusory assertion that the Clinical Researchers owed them a duty.[35]

Defendants cite to *Hernandez v. Ciba–Geigy Corp. USA*[36] for the proposition that "Texas common law has recognized a cause of action against a party which did

---

**32.** *Sohmer,* 2002 WL 31323763, at *3 (N.D.Tex. Oct. 15, 2002).

**33.** *Torrington v. Stutzman,* 46 S.W.3d 829, 838 (Tex.2001).

**34.** *Great Plains Trust Co.,* 313 F.3d at 316–17.

**35.** *Id.*

**36.** *Hernandez v. Ciba–Geigy Corp. USA,* 200 F.R.D. 285, 295–296 (S.D.Tex.2001) (emphasis added).

not manufacture the product and was not involved in its chain of distribution *based on breach of an assumed duty to warn.*" In *Hernandez,* plaintiffs asserted that defendant Children and Adults with Attention–Deficit Hyperactivity Disorder ("CHADD"), a non-manufacturer, assumed a duty to warn plaintiffs.[37] This duty allegedly arose when CHADD collaborated with the manufacturer of Ritalin in broadly defining Attention Deficit Hyperactivity Disorder, thus leading to the drug's overprescription.[38] The court, however, disagreed with plaintiffs. The court instead held that plaintiffs failed to allege any facts showing that CHADD undertook its duties for the benefit of the plaintiffs and, therefore, did not have to warn plaintiffs of potential injuries.[39]

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*[40] is also informative. There, the plaintiffs, holders of convertible debentures of Allwaste, Inc., alleged that Morgan Stanley, a securities firm that Allwaste had hired to perform certain financial services, failed to exercise due care in investigating a merger to which Allwaste was a party. Due to plaintiffs' failure to plead specific facts,

the Fifth Circuit rejected plaintiffs' argument that Morgan Stanley voluntarily undertook, for plaintiffs' benefit, a duty to exercise reasonable care in its investigation.[41]

Analogously, Plaintiffs in this case fail to state any specific facts showing that the Clinical Researchers undertook a duty of reasonable care to the Plaintiffs. Instead, Plaintiffs, in their petitions, merely make conclusory allegations that the Clinical Researchers assumed such a duty.[42] Plaintiffs did not support those claims in their subsequent brief or submit evidence. In fact, Plaintiffs' brief merely states that the Clinical Researchers performed clinical studies for Merck, and accompanies such statements with conclusory allegations concerning the remaining elements of a claim for negligent undertaking.[43] Plaintiffs' omission of facts supporting the existence of a duty is fatal. Merck has shown that Defendants were not aware of Plaintiffs' existence prior to this litigation and merely collected and reported data to Merck.

Plaintiffs would have this Court find that the Clinical Researchers undertook a duty to Plaintiffs based on the Supreme

---

37. *Id.*

38. *Id.*

39. *Id.* at 296 ("[Plaintiffs] fail to allege that CHADD undertook to advertise or promote Ritalin for the benefit of the [p]laintiffs' children. Instead, the [p]laintiffs plead that CHADD was acting for the benefit of [the manufacturer] to increase Ritalin sales.")

40. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 310 (5th Cir.2002).

41. *Id.* at 316–317 ("Although plaintiffs contend in their brief that they have pleaded that defendants voluntarily undertook their 'due diligence' investigation … for the benefit of Allwaste's stockholders and other investors, they conspicuously failed to cite any place in

their complaint that advances such an allegation concerning the debenture holders.")

42. Pl.'s Brief at 7; *Staples* Petition at 8 ("Defendants [e]ither owed a duty to Plaintiffs … or are liable for the tort of negligent undertaking … Defendants undertook to provide services for others and therefore had a duty to use reasonable care in the provision of said services.")

43. *Id.* ("[Clinical Researchers] participated with Merck in medical studies and research regarding the health hazards of VIOXX®, and were involved in concealing and/or falsifying the results of those studies … [Clinical Researchers] certainly knew that purchasers of VIOXX® would rely on the study published by Merck to determine whether they were exposing themselves to a dangerous product.")

Court of California's holding in *Artiglio v. Corning, Inc.*[44] *Artiglio* does not necessarily state the law of Texas, but in any case, it is distinguishable. In *Artiglio*, plaintiffs, who suffered injuries from silicone breast implants, sued Dow Corning, Inc., the manufacturer of the implants. Plaintiffs then joined Dow Chemical Co., Dow Corning's parent corporation, claiming that, by researching the effects of silicone on the body, Dow Chemical had undertaken a duty that "implicates the well-being and protection of potential patients who ultimately may receive treatment developed on its basis."[45] The California Court recognized that the theory of negligent undertaking is available against pharmaceutical researchers.[46]

Defendants do not contend that there may never be a claim of negligent undertaking successfully asserted against the researcher of a pharmaceutical drug. They merely assert that, under the facts of this case, that duty does not exist. In *Artiglio*, the parent corporation conducted research for its subsidiary,[47] the toxicology research implicated the well-being of third parties,[48] and the researcher actually made public statements based on the information it gathered.[49] In this case, the Clinical Researchers are independent of Merck,[50] did not conduct studies which in and of themselves analyzed the cardiovascular safety of VIOXX®,[51] and did not release any statements to the public.[52]

Moreover, Plaintiffs did not, and could not, allege that defendants negligently failed to perform the services for which they contracted with Merck. Plaintiffs did not allege that the Clinical Researchers incorrectly performed their studies or that they concealed any information they found from Merck. The Clinical Researchers merely reported data. Even where substantially greater involvement has been found, such as in *Great Plains Trust Co.*,[53] Texas has refused to impose a duty. In that case, Morgan Stanley released an incorrect fairness opinion, yet the Fifth Circuit did not hold Morgan Stanley liable to the shareholders. Here, not only did the Clinical Researchers not undertake a duty to Plaintiffs, but they apparently correctly fulfilled their obligations to Merck.[54]

Finally, because Plaintiffs cannot establish that the Clinical Researchers voluntarily assumed a duty to plaintiffs or negligently performed their services, they cannot establish that the Clinical Researchers in any way increased Plaintiffs' risk of harm. Plaintiffs allege that the injuries arose as a result of Defendants' concealing information regarding the safety of VIOXX®. Since the Clinical Researchers played no role in marketing the drug or designing the accompanying labels or warnings, they have done nothing on which the Plaintiffs could have detrimentally relied.

---

**44.** 18 Cal.4th 604, 76 Cal.Rptr.2d 479, 957 P.2d 1313, 1319 (1998).

**45.** *Id.*

**46.** *Id.,* 957 P.2d at 1319–20. However, because Dow Chemical had conducted its research far before the development of silicone implants, the Court found that the connection between the research and the injuries was far too attenuated.

**47.** *Id.*

**48.** *Id.*

**49.** *Id.*

**50.** Resnick Decl. ¶ 31.

**51.** *Id.* at ¶ 15.

**52.** *Id.* at ¶¶ 25, 28.

**53.** *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 310 (5th Cir.2002).

**54.** Resnick Decl. ¶ 21.

In conclusion, the Court finds that Plaintiffs have failed to establish any of the elements of a negligent undertaking claim and, therefore, holds that they cannot possibly prevail on such a cause of action.

### B. Can Plaintiffs Possibly Prevail on a Claim of Fraud?

 Plaintiffs, likewise, cannot possibly prevail on their claim of fraud against the Clinical Researchers. To prevail on their fraud claim, Plaintiffs must demonstrate: (1) The Clinical Researchers made a false representation of a material fact, (2) knew the representation was false or made it recklessly without any knowledge of the truth, and (3) intended to induce Plaintiffs to act upon the representation; and (4) the Plaintiffs actually and justifiably relied upon the representation to their detriment.[55] The Clinical Researchers' failure to disclose information will not constitute a misrepresentation unless they had an affirmative duty to speak, such as in a confidential or fiduciary relationship.[56] Plaintiffs must provide factual support for their fraud claim, instead of relying on speculative and conclusory allegations.[57]

Plaintiffs have not sufficiently alleged that the Clinical Researchers made any material misrepresentations or omissions or collaborated with Merck in its alleged misrepresentations. Plaintiffs have provided the times, places, and contents of certain alleged misrepresentations by Merck.[58] In contrast, the only instances in which it appears that the Plaintiffs have claimed the Clinical Researchers are liable for fraud are in statements such as *"Defendants* concealed the serious cardiovascular risks ..." and *"Defendants* committed actual fraud ...,"[59] but nowhere do the Plaintiffs plead the particulars regarding the Clinical Researchers' allegedly false representations and omissions. Merck, on the other hand, has demonstrated that the Clinical Researchers made no misrepresentations.[60] Furthermore, the Clinical Researchers' failure to speak does not constitute fraud because they lacked an affirmative duty to speak.[61]

Plaintiffs have also failed to allege concrete facts showing that the Clinical Researchers expected, or at least should have expected, that Plaintiffs' reliance on the alleged misrepresentations was "likely and justifiable."[62] The plaintiffs in *Great*

---

**55.** *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex.2001).

**56.** *Leigh v. Danek Medical, Inc.,* 28 F.Supp.2d 401, 406 n. 2 (N.D.Tex.1998).

**57.** *Sohmer,* 2002 WL 31323763 at *2 (N.D.Tex. Oct. 15, 2002); *Waters v. State Farm Mut. Auto. Ins. Co.,* 158 F.R.D. 107, 109 (S.D.Tex.1994) ("Defendants' motion to dismiss ... asserts that the pleadings fail to state a cause of action because they do not specify the time, place, or content of any alleged misrepresentations ... thereby failing to satisfy [FRCP 9(b)].") *See also,* Fed.R.Civ.P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.")

**58.** *Staples* Petition at 4–6 ("Merck did nothing further to publish [EULAR studies showing VIOXX® use resulted in increased hyperten-

sion], which were again reported and denied by Merck ... Merck engaged in a massive advertising and sampling program ... On or about August 29, 2001, the Journal of the American Medical Association published a peer-reviewed human epidemiologic study ... showing what Merck had concealed.")

**59.** *Id.* at 4, 9 (emphasis added).

**60.** *See* discussion of negligent misrepresentation claim, *supra.*

**61.** *See* discussion of negligence claim, *supra.*

**62.** *Staples* Petition at 11 ("Defendants committed actual fraud ... with the intent that all Plaintiffs rely on such material representations.")

*Plains Trust Co.* made similar assertions to the ones that Plaintiffs make here.[63] In that case, the Fifth Circuit ruled that plaintiffs' conclusory assertions failed to support a claim of fraud and, as a result, held that Morgan Stanley was fraudulently joined.[64] Because Plaintiffs have failed to establish that the Clinical Researchers expected Merck to misrepresent the data they furnished, or that Plaintiffs would rely on said misrepresentations, the Plaintiffs have not sufficiently alleged fraud by the Clinical Researchers. Consequently, a Texas court could not possibly find for Plaintiffs in a fraud claim against the Clinical Researchers.

### C. Can Plaintiffs Possibly Prevail on a Claim of Civil Conspiracy?

▮ First, Plaintiffs have alleged that Defendants in this case may be liable for the claims Plaintiffs have asserted due to the existence of an agency relationship.[65] The question of whether the Clinical Researchers are agents of Merck or are independent contractors is one of fact, with the deciding factor being the extent of the control Merck retained over the details of accomplishing the assigned tasks.[66] If Merck retained sufficient control, then there is an agency relationship.[67] If there is an agency relationship between Merck and the Clinical Researchers, as Plaintiffs allege, then there can be no conspiracy between them, as an agent cannot conspire with its principal.[68]

▮ Even if the Court were to find that the Clinical Researchers and Merck did not have an agency relationship, Plaintiffs still cannot possibly recover on a claim of civil conspiracy against the Clinical Researchers. A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.[69] The elements of civil conspiracy under Texas law require: (1) two or more persons; (2) with an object to be accomplished; (3) who have a meeting of the minds on the object or course of action; (4) who commit one or more unlawful, overt acts; and (5) damages proximately result.[70] To state a claim of civil conspiracy under Texas law, Plaintiffs must be able to bring the cause of action against all of the individual conspirators.[71] Therefore, Plaintiffs must establish that the Clinical Researchers are liable for *both* the conspiracy and the underlying challenged act.[72]

---

**63.** *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 323 n. 21 (5th Cir.2002) ("Paragraph[s] 54 [and 55 of plaintiffs' pleading] state: *Defendants* knew, or should have known, that the information .they were communicating directly or indirectly to the public, the Debenture holders, and other interested parties would be relied upon by the public [and impact the market]."), at 325 (emphasis added).

**64.** *Id.* at 323.

**65.** *Staples* petition at 3.

**66.** *Lyons v. Lindsey Morden Claims Mgmt., Inc.,* 985 S.W.2d 86, 90–91 (Tex.App.—El Paso 1998, no pet. h).

**67.** *McDuff v. Chambers,* 895 S.W.2d 492, 497 (Tex.App.—Waco, 1995, writ denied).

**68.** *Lyons,* 985 S.W.2d at 91 ("[T]he acts of an agent and a principal are the acts of a single entity, and cannot constitute conspiracy.")

**69.** *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex.1995).

**70.** *Leigh v. Danek Medical, Inc.,* 28 F.Supp.2d 401, 405 (N.D.Tex.).

**71.** *Id.*

**72.** *Leigh,* 28 F.Supp.2d at 405 n. 1; *American Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 438 (Tex.1997) ("Allegations of conspiracy are not actionable absent an underlying overt unlawful act or purpose [such as fraud or concealment]").

Plaintiffs cannot possibly hold the Clinical Researchers liable for the underlying conduct. Plaintiffs have premised their conspiracy claim on their allegations that the Clinical Researchers are liable for fraud, a claim for which they cannot prevail.[73] Therefore, Plaintiffs' conspiracy claim must fail. Consequently, Plaintiffs' reliance on *Nicolet, Inc. v. Nutt*[74] and *Rogers v. R.J. Reynolds Tobacco Co.*[75] is misguided. Those cases held that a conspiracy claim may be brought against a party that intentionally conceals material information. However, the Clinical Researchers neither concealed information about the dangers of VIOXX® nor had any such information to conceal.

Even if Plaintiffs could possibly succeed in a claim of fraud against the Clinical Researchers, they still could not prevail on a conspiracy claim because they have no evidence of a "meeting of the minds" between Merck and the Clinical Researchers.[76] Plaintiffs have made only a conclusory allegation that the Defendants acted in concert.[77] Such allegations are insufficient under Texas law. In *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, for example, petitioner logged and perforated oil wells for the respondent in an illegally deviated manner, such that it extracted oil from surrounding wells.[78] The Texas Supreme Court refused to find that the petitioner had conspired with the lease owners to harm surrounding lease owners, as there was no evidence that petitioner knew the deviated wells intruded upon other leases.[79] Therefore, they could not have agreed to injure the owners of said leases. Furthermore, petitioner did not share in respondent's "ill-gotten gains."[80]

Here, Plaintiffs merely speculate that Merck and the Clinical Researchers agreed to defraud the Plaintiffs. Merck, however, has presented evidence to discredit such speculation. As in *Schlumberger Well Surveying Corp.*, the Clinical Researchers were not even aware of an injury to Plaintiffs. Also, because the tests were double-blind, the Clinical Researchers could not discern whether there was a pattern that they would have to conceal. As a result, if the Plaintiffs were victims of fraud, the Clinical Researchers did not participate in such fraud. The Clinical Researchers had no interest, pecuniary or other, in the FDA's approval, and Merck's sales, of VIOXX®.

In sum, Plaintiffs cannot prevail on a claim of fraud, so the conspiracy claim is not viable. Even if this were not so, Plaintiffs can still not demonstrate that there was a meeting of the minds between Merck and the Criminal Researchers to commit fraud. Therefore, this Court finds that Plaintiffs' conspiracy claim is unsustainable.

---

**73.** *Staples* Petition at 6 ("Plaintiffs allege that the suppression of this information constituted a common scheme by Defendants to conceal material information from Plaintiffs"), at 11 ("conspiracy to market a known unreasonably dangerous product and conceal the dangers from consumers constitutes civil conspiracy under Texas law."). *See* discussion of fraud claim, *supra*.

**74.** 525 A.2d 146, 149–50 (Del.1987).

**75.** 761 S.W.2d 788, 797 (Tex.App.—Beaumount 1988, writ denied).

**76.** *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex.1969) ("there must be a preconceived plan and unity of design and purpose, for the common design is of the essence of the conspiracy.")

**77.** *Staples* Petition, *supra* note 52.

**78.** *Schlumberger Well Surveying Corp.*, 435 S.W.2d at 856.

**79.** *Id.* at 857.

**80.** *Id.*

*CONCLUSION*

This Court finds that removal was proper, and this Court has jurisdiction over this suit.

**SO ORDERED.**