ACCEPTED
01-15-00604-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/4/2015 4:34:10 PM
CHRISTOPHER PRINE
CLERK

## No. 01-15-00604-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/4/2015 4:34:10 PM
CHRISTOPHER A. PRINE
Clerk

### In the Court of Appeals
### For the First District of Texas
### At Houston

**D&R Constructors, Inc., Michael Rushing, Stephanie Rushing, Penn Rushing, and Florence Rushing,**
*Appellants*,

**v.**

**Texas Gulf Energy, Inc. on behalf of CS Bankers V LLC and Texas Gulf Fabricators, et al.,**
*Appellees*.

Appeal from the 270th District Court of Harris County, Texas;
Trial Court Cause No. 2013-00543; Hon. Brent Gamble, Presiding

### Brief of Appellees Texas Gulf Fabricators, LLC, Brian G. Hendry, and Lester H. Smith

**Dobrowski, Larkin & Johnson L.L.P.**
Paul J. Dobrowski
State Bar No. 05927100
*pjd@doblaw.com*
Cody W. Stafford
State Bar No. 24068238
*cstafford@doblaw.com*
4601 Washington Ave, Suite 300
Houston, Texas 77007
*Counsel for Appellees Texas Gulf Fabricators, LLC, Brian G. Hendry, and Lester H. Smith*

*Oral Argument Requested*                               **November 4, 2015**

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellants:** | D&R Constructors, Inc.; Michael Rushing; Stephanie Rushing; Penn Rushing; Florence Rushing; and George Gore |
| **Counsel for Appellants:** | George W. Gore<br>State Bar No. 24029582<br>*ggore@goretexas.com*<br>THE GORE LAW FIRM, P.C.<br>6200 Savoy, Suite 1150<br>Houston, Texas 77036<br>(713) 224-2000 (Telephone)<br>(713) 224-2004 (Facsimile) |
| **Appellees:** | Texas Gulf Energy, Inc.; CS Bankers V, LLC; and Timothy Connolly |
| **Counsel for Appellees:** | Gary M. Jewell<br>State Bar No. 10664800<br>*gjewell@csj-law.com*<br>Adam L. Tepper<br>State Bar No. 24079445<br>*atepper@csj-law.com*<br>CHRISTIAN, SMITH & JEWELL, L.L.P.<br>2302 Fannin, Suite 500<br>Houston, Texas<br>(713) 659-7617 (Telephone)<br>(713) 659-7641 (Facsimile) |

**Appellees:** Texas Gulf Fabricators, LLC; Brian G. Hendry; and Lester H. Smith

**Counsel for Appellees:** Paul J. Dobrowski
State Bar No. 05927100
*pjd@doblaw.com*
Cody W. Stafford
State Bar No. 24068238
*cstafford@doblaw.com*
DOBROWSKI, LARKIN & JOHNSON L.L.P.
4601 Washington Ave., Suite 300
Houston, Texas 77007
(713) 659-2900 (Telephone)
(713) 659-2908 (Facsimile)

**Trial Court:** Hon. Brent Gamble
270th District Court
Harris County Civil Courthouse
201 Caroline, 13th Floor
Houston, Texas 77002
(713) 368-6400 (Telephone)

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL ........................................................ii

TABLE OF CONTENTS ...............................................................................iv

INDEX OF AUTHORITIES ..........................................................................viii

RECORD REFERENCES................................................................................xv

STATEMENT OF THE CASE........................................................................xvi

STATEMENT REGARDING ORAL ARGUMENT ...........................................xvii

ISSUES PRESENTED ................................................................................xviii

STATEMENT OF FACTS .............................................................................. 1

    A.    THE PARTIES. ............................................................................... 1

    B.    D&R OBTAINS A LOAN—BUT DOES NOT REPAY. ..................................2

    C.    D&R AGREES TO SELL THE NOTE AND DEED OF TRUST TO CS BANKERS. . 4

    D.    CS BANKERS FORECLOSES ON THE WADE ROAD PROPERTY. ......................5

    E.    THE LAWSUIT BEGINS. ...................................................................6

    F.    THE TRIAL COURT GRANTS THE SUMMARY JUDGMENTS...........................8

    G.    THE TRIAL COURT SANCTIONS THE RUSHINGS AND THEIR ATTORNEY.....9

H.    THE FINAL JUDGMENT. .................................................................13

STANDARD OF REVIEW ................................................................... 14

A.    MOTIONS FOR SUMMARY JUDGMENT ........................................ 14

    1.    Traditional Summary Judgment............................................. 14

    2.    No-Evidence Summary Judgment........................................... 14

B.    SANCTIONS ORDER .................................................................15

SUMMARY OF ARGUMENT ............................................................ 16

ARGUMENT ....................................................................................17

A.    THE FORECLOSURE WAS PROPER. .............................................17

    1.    D&R's wrongful foreclosure claim fails because the foreclosure notices complied with the Texas Property Code................................... 18

        a.    The notices identify the time of the foreclosure sale............................ 19

        b.    The notices identify the place of the foreclosure sale........................... 21

        c.    The foreclosure notice identifies Schlanger as the substitute trustee.... 22

        d.    Schlanger's role as substitute trustee was perfectly legitimate.............. 22

    2.    D&R's claim that it did not receive notice of the foreclosure does not support its wrongful foreclosure claim. ...........................................24

    3.    D&R's wrongful foreclosure claim fails because the foreclosure notice complied with the Deed of Trust............................................... 26

        a.    The guarantors were not entitled to notice of the foreclosure............... 27

b. None of the "other defects" identified by D&R supports its wrongful foreclosure claim. ............................................... 29

4. D&R failed to prove that any alleged irregularity in the foreclosure caused it any damages. ........................................................ 32

5. Because the foreclosure was proper, D&R's quiet title claim fails as a matter of law. .................................................................. 34

B. THE SUMMARY JUDGMENTS DISPOSED OF ALL CLAIMS. .......................... 35

1. Fabricators and Hendry were entitled to summary judgment on the alleged promissory estoppel claim because they did not make any promises to the Rushings. ...................................................... 36

2. The Rushings waived any complaint to Fabricators' and Hendry's summary judgments when they failed to file exceptions. ...................... 39

3. The Rushings abandoned any promissory estoppel claim. .................... 40

4. The Rushings failed to adequately plead promissory estoppel. ............. 41

C. THE RUSHINGS HAD ADEQUATE TIME FOR DISCOVERY. ........................... 42

D. THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT ON THE REMAINING CLAIMS IS UNASSAILABLE. ........................................ 43

1. The Rushings admit there were no misrepresentations. ...................... 43

2. The Rushings admit there were no contracts. ....................................... 44

3. The Rushings' quantum meruit claim fails because they did not provide services or materials. ............................................... 44

4. Neither Fabricators nor Hendry had a fiduciary relationship with the Rushings. .............................................................. 46

5.  The Rushings had no personal property to convert ................................ 47

6.  The Rushings cannot maintain a standalone cause of action for civil conspiracy. ....................................................................................... 49

7.  The Rushings had no contracts with which Fabricators or Hendry could interfere. .......................................................................................50

E.  GORE AND THE RUSHINGS REPEATEDLY FILED GROUNDLESS PLEADINGS, AND THE TRIAL COURT PROPERLY SANCTIONED THEM. ...........................52

1.  Sanctions are appropriate under Rule 13 and Chapter 10. .....................52

2.  Gore and the Rushings repeatedly filed pleadings containing a fraud claim they *knew* was meritless. ............................................................... 54

3.  The monetary sanction is not excessive and is supported by considerable evidence. ............................................................................. 56

4.  The sanction must be affirmed. ................................................................. 58

F.  APPELLANTS WAIVED ANY ERROR BY FAILING TO FILE A PROPER BRIEF. . 58

G.  PRAYER .............................................................................................................60

CERTIFICATE OF SERVICE .................................................................................62

CERTIFICATE OF COMPLIANCE .......................................................................63

# INDEX OF AUTHORITIES

**Cases**

*Adebo v. Litton Loan Servicing, L.P.,*
2008 WL 2209703, at *4 (Tex. App.—Houston [1st Dist.] May 29, 2008,
no pet.) ................................................................................................ 24, 25

*Alexander v. Alexander,*
956 S.W.2d 712 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) ............. 58

*Allied Vista, Inc. v. Holt,*
987 S.W.2d 138 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ............. 37

*Am. Sav. & Loan Ass'n of Houston v. Musick,*
531 S.W.2d 581 (Tex. 1975) ...................................................................27, 33

*Am. Tobacco Co., Inc. v. Grinnell,*
951 S.W.2d 420 (Tex. 1997) ............................................................................ 49

*Appleton v. Appleton,*
76 S.W.3d 78 (Tex. App.—Houston 2002 [14th Dist.], no pet.) ............. 53, 55, 56

*Apresa v. Montfort Ins. Co.,*
932 S.W.2d 246 (Tex. App.—El Paso 1996, no writ) ........................................ 56

*Brantley v. Etter,*
677 S.W.2d 503 (Tex. 1984) ............................................................................ 57

*Brooks v. Bank of New York Mellon,*
2014 WL 1322822 (S.D. Tex. Mar. 31, 2014) .................................................... 25

*Bullock v. Am. Heart Ass'n,*
360 S.W.3d 661 (Tex. App.—Dallas 2012, pet. denied) ..................................... 59

*Carroll v. Timmers Chevrolet, Inc.,*
592 S.W.2d 922 (Tex. 1979) ............................................................................ 49

*City of Houston v. Howard,*
786 S.W.2d 391 (Tex. App.—Houston [14th Dist.] 1990, writ denied)............. 41

*Coble v. Adams,*
  2014 WL 6602480 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.)....60

*Coffey v. Johnson,*
  142 S.W.3d 414 (Tex. App.—Eastland 2004, no pet.) ....................................... 41

*Dubose v. Worker's Med., P.A.,*
  117 S.W.3d 916 (Tex. App.—Houston [14th Dist.] 2003, no pet.) .................... 37

*Elkins v. Stotts–Brown,*
  103 S.W.3d 664 (Tex. App.—Dallas 2003, no pet.) .......................................... 53

*English v. Fischer,*
  660 S.W.2d 521 (Tex. 1983) ............................................................................. 37

*Essex Crane Rental Corp. v. Carter,*
  371 S.W.3d 366 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ................ 34

*Fed. Land Bank Ass'n of Tyler v. Sloane,*
  825 S.W.2d 439 (Tex. 1991) ............................................................................. 43

*Fillion v. David Silvers Co.,*
  709 S.W.2d 240 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.)....... 33

*First State Bank v. Keilman,*
  851 S.W.2d 914 (Tex. App.—Austin 1993, writ denied) (op. on reh'g).............. 23

*Fisher v. Yates,*
  953 S.W.2d 370 (Tex. App.—Texarkana 1997, no writ).................................... 50

*Flameout Design & Fabrication Inc. v. Pennzoil Caspian Corp.,*
  994 S.W.2d 830 (Tex. App.—Houston [1st Dist.] 1999, no pet.) .......................15

*FM Props. Operating Co. v. City of Austin,*
  22 S.W.3d 868 (Tex. 2000) ............................................................................... 14

*Fredonia State Bank v. Gen. Am. Life Ins. Co.,*
  881 S.W.2d 279 (Tex. 1994) ............................................................................. 60

*Glass v. Glass,*
  826 S.W.2d 683 (Tex. App.—Texarkana 1992, writ denied) ............................. 57

*Goswami v. Metropolitan Sav. and Loan Ass'n*,
751 S.W.2d 487 (Tex. 1988)................................................................17

*Green v. Kaposta*,
152 S.W.3d 839 (Tex. App.—Dallas 2005, no pet.)..............................60

*Harwath v. Hudson*,
654 S.W.2d 851 (Tex. App.—Dallas 1983, writ ref'd n.r.e.)..............31

*Hill v. Fremont Inv. & Loan*,
2004 WL 1178607 (Tex. App.—Dallas May 28, 2004, no pet.) .........25

*Holloway v. Skinner*,
898 S.W.2d 793 (Tex. 1995) ...............................................................50

*Houston Omni USA Co., Inc. v. Southtrust Bank Corp., N.A.*,
2009 WL 1161860, at *6 (Tex. App.—Houston [1st Dist.] Apr. 30, 2009,
no pet.) ...............................................................................................18

*In re Barber,*
982 S.W.2d 364 (Tex. 1998) ...............................................................15

*In re Kellogg Brown & Root, Inc.*,
166 S.W.3d 732 (Tex. 2005) ...............................................................45

*James v. Wells Fargo Bank, N.A.*,
2014 WL 2123060 (S.D. Tex. May 21, 2014) ....................................33

*Kainer v. ABMC Corp.*,
2006 WL 407794 (Tex. App.—Houston [1st Dist.] Feb. 23, 2006, no pet.) ......20

*King Ranch, Inc. v. Chapman*,
118 S.W.3d 742 (Tex. 2003) ...............................................................14

*Lambert v. First Nat. Bank of Bowie*,
993 S.W.2d 833 (Tex. App.—Fort Worth 1999, pet. denied)........................ 25, 32

*Lampasas v. Spring Center, Inc.*,
988 S.W.2d 428 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ...................37

*Leigh v. Danek Med., Inc.*,
28 F. Supp.2d 401 (N.D. Tex. 1998) ...................................................50

*Long v. NCNB-Texas Nat. Bank,*
882 S.W.2d 861 (Tex. App.—Corpus Christi 1994, no writ) ............................ 27

*Longoria v. Lasater,*
292 S.W.3d 156 (Tex. App.—San Antonio 2009, pet. denied) .......................... 34

*Low v. Henry*, 221 S.W.3d 609 (Tex. 2007) ...................................................... 15, 53

*Lundy v. Masson,*
260 S.W.3d 482 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) .. 43, 46, 55

*Martins v. BAC Home Loans Servicing, L.P.,*
722 F.3d 249 (5th Cir. 2013) ...................................................................... 25, 33

*McConnell v. Southside Independent School Dist.,*
858 S.W.2d 337 (Tex. 1993) .............................................................................. 39

*Miller v. Armogida,*
877 S.W.2d 361 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ................. 57

*Miller v. Graves,*
185 S.W.2d 745 (Tex. Civ. App.—Fort Worth 1945, writ ref'd) ........................ 45

*Nat'l Commerce Bank v. Stiehl,*
866 S.W.2d 706 (Tex. App.—Houston [1st Dist.] 1993, no writ) ....................... 18

*Onwuteaka v. Cohen,*
846 S.W.2d 889 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ............... 25

*Ortiz v. Collins.*
203 S.W.3d 414 (Tex. App.—Houston [14th Dist.] 2006, no pet.) .............. 38, 50

*Park Place Hosp. v. Estate of Milo,*
909 S.W.2d 508 (Tex. 1995) .......................................................................... 14

*Peterson v. Black,*
980 S.W.2d 818 (Tex. App.—San Antonio 1998, no pet.) ................................ 23

*Powell v. Stacy,*
117 S.W.3d 70 (Tex. App.—Fort Worth 2003, no pet.) ................................ 23, 31

*Provident Life & Accident Ins. Co. v. Knott,*
128 S.W.3d 211 (Tex. 2003) ...................................................................... 14

*Robson v. Gilbreath,*
267 S.W.3d 401 (Tex. App.—Austin 2008, pet. denied)...................................... 54

*Rodriguez v. U.S. Bank, N.A.,*
2013 WL 5173125 (W.D. Tex. Sept. 12, 2013) ...................................................... 26

*Saravia v. Benson,*
433 S.W.3d 658 (Tex. App.—Houston [1st Dist.] 2014, no pet.) .................17, 21

*Sauceda v. GMAC Mortg. Corp.,*
268 S.W.3d 135 (Tex. App.—Corpus Christi 2008, no pet.)............................. 33

*Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist. ex rel. Bd. of Directors,*
198 S.W.3d 300 (Tex. App.—Texarkana 2006, pet. denied) ............................54

*Schwartz v. Pinnacle Communications,*
944 S.W.2d 427 (Tex. App.—Houston [14th Dist.] 1997, no writ) ....................48

*Scott v. Walker,*
141 Tex. 181, 170 S.W.2d 718 (1943)....................................................................46

*Smith v. Heard,*
980 S.W.2d 693 (Tex. App.—San Antonio 1998, pet. denied)...........................37

*Southwestern Bell Telephone Co. v. John Carlo Texas, Inc.,*
843 S.W.2d 470 (Tex. 1992) ..................................................................................52

*Stanley v. CitiFinancial Mortg. Co., Inc.,*
121 S.W.3d 811 (Tex. App.—Beaumont 2003, pet. denied) ..............................26

*Staples v. Merck & Co., Inc.,*
270 F. Supp.2d 833 (N.D. Tex. 2003) ..................................................................50

*Stoner v. Thompson,*
578 S.W.2d 679 (Tex. 1979)....................................................................................41

*Texas Bank and Trust Co. v. Moore,*
595 S.W.2d 502 (Tex. 1980) ...................................................................................47

*Tilton v. Marshall,*
925 S.W.2d 672 (Tex. 1996) ............................................................. 50

*Triad Home Renovators v. Dickey,*
15 S.W.3d 142 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ...................... 42

*Unifund CCR Partners v. Villa,*
299 S.W.3d 92 (Tex. 2009) ...............................................................15

*Univ. Savings, Ass'n v. Springwoods Shopping Ctr.,*
644 S.W.2d 705 (Tex. 1982) ...............................................................17

*Valadez v. Avitia,*
238 S.W.3d 843 (Tex. App.—El Paso, 2007, no pet.) ......................................... 60

*Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,*
787 S.W.2d 942 (Tex. 1990) ............................................................. 44

*Willis v. Donnelly,*
199 S.W.3d 262 (Tex. 2006) ........................................................ 46, 47

*Willoughby v. Jones,*
151 Tex. 435, 251 S.W.2d 508 (1952) ................................................. 33

## Statutes

TEX. CIV. PRAC. & REM. CODE § 10.001.................................................. 60, 63

TEX. CIV. PRAC. & REM. CODE § 10.004(b)................................................60

TEX. PROP. CODE § 51.002 .................................................................... passim

Tex. Prop. Code § 51.002(a) ................................................................. 23

TEX. PROP. CODE § 51.002(b), (c).......................................................... 21

Tex. Prop. Code § 51.002(c).................................................................. 21

TEX. PROP. CODE § 51.002(e)............................................................. 27, 28

TEX. PROP. CODE § 51.0075................................................................24

xiii

**Rules**

TEX. R. APP. P. 33.1(a) ................................................................................ 64

TEX. R. APP. P. 38.1(e), (h) ........................................................................ 68

TEX. R. APP. P. 38.1(i) ................................................................................ 68

TEX. R. CIV. P. 13 ......................................................................... 59, 61, 63

TEX. R. CIV. P. 166a(c) ............................................................................... 14

TEX. R. CIV. P. 166a(i) ................................................................................15

TEX. R. CIV. P. 45 ....................................................................................... 46

# RECORD REFERENCES

This brief uses the following format for citations to the Record:

1 CR ___          Clerk's Record (Vol. 1)

2 CR ___          Clerk's Record (Vol. 2)

RR ___            Reporter's Record for Sanctions Hearing (January 30, 2015)

Ex. ___           Exhibits to the Reporter's Record

# STATEMENT OF THE CASE

*Nature of the case*

This case arises from the foreclosure on a debt owed by D&R and secured by real property on Wade Road in Baytown, Texas. CS Bankers foreclosed on the debt, acquired the real property, and later transferred the property to Fabricators. Despite agreeing to the terms of the transaction, D&R and the Rushings want that property back.

*Course of proceedings*

Texas Gulf Energy filed suit against the Rushings for conversion and sought injunctive relief. The Rushings later counterclaimed and D&R intervened. The Rushings and D&R then sued Fabricators, Hendry, and Smith—and those parties later moved for summary judgment on all claims asserted against them.

*Disposition below*

The trial court granted summary judgments in favor of Fabricators and Hendry (1 CR 593; 2 CR 1967; 2 CR 1944–1945) (**Tab B**), and Smith (2 CR 1580) (**Tab C**), and ordered that D&R and the Rushings take nothing by their claims. The trial court also sanctioned D&R, the Rushings, and their attorney, George Gore, for filing groundless, bad-faith pleadings. (2 CR 2025–2026) (**Tab D**).

The trial court signed a final judgment in favor of Fabricators, Hendry, and Smith on April 13, 2015. 2 CR 977–979; *see* **Tab A** (final judgment).

## STATEMENT REGARDING ORAL ARGUMENT

It is unlikely that oral argument would materially aid the Court. Neither the law nor the facts are complicated. Indeed, Appellants raise the same arguments that virtually every other foreclosure debtor raises—arguments this Court has seen and disposed of many times. If the Court deems oral argument necessary, however, Fabricators, Hendry, and Smith request equal time to argue.

# ISSUES PRESENTED

1.      The trial court granted summary judgment on D&R's wrongful foreclosure and quiet title claims. Did the trial court err by finding that the foreclosure complied with the Texas Property Code and the Deed of Trust?
(Response to Appellants' Points of Error One and Two)

2.      Did the Rushings properly plead and preserve a cause of action for promissory estoppel? If so, did the trial court err by granting summary judgment on that claim?
(Response to Appellants' Point of Error Three)

3.      The Rushings did not move to compel discovery from Fabricators, Hendry, or Smith. Did the trial court err by granting no-evidence motions for summary judgment without further discovery?
(Response to Appellants' Point of Error Four)

4.      Did the trial court err by granting summary judgment on the Rushings' remaining claims?
(Response to Appellants' Point of Error Five)

5.      Did the trial court abuse its discretion when it sanctioned the Rushings and Gore for repeatedly filing groundless pleadings?
(Response to Appellants' Point of Error Six)

## STATEMENT OF FACTS

This case is about a company that took on too much debt. Unfortunately, like many small companies, D&R failed. Fortunately for D&R, however, its owners (the Rushings) found a business willing to buy the debt and put an end to the financial drain. That transaction relieved D&R and the Rushings of approximately $500,000 in debt and led to a foreclosure on a piece of real property in Baytown, Texas. Now, after receiving the benefit of that bargain, D&R and the Rushings want this Court to nullify the deal and return the commercial property (but not the debt) to them.

### A. THE PARTIES.

Appellant D&R Constructors, Inc. is a Texas company owned and operated by Appellants Michael Rushing, Stephanie Rushing, Penn Rushing, and Florence Rushing. D&R operated a fabrication facility on Wade Road in Baytown, Texas. At times, the distinction between D&R and the individual Rushings is important for this appeal; other times it is not. Unless otherwise noted, a reference to "the Rushings" in this brief includes D&R as well.

Appellees Texas Gulf Energy, Inc. and CS Bankers V, LLC are related entities that bought a note and deed of trust secured by property formerly owned by D&R. CS Bankers foreclosed on the property, which led to this lawsuit. Appellee Timothy Connolly worked for both Texas Gulf Energy and CS Bankers.

1

Appellee Texas Gulf Fabricators, LLC, is a Texas limited liability company partially owned by Appellee Brian G. Hendry. Fabricators operates the fabrication[1] facility on Wade Road previously owned by D&R. Appellee Lester H. Smith is Hendry's father-in-law, but has no ownership interest in Fabricators (or any other connection to the transactions that form this dispute).

**B.     D&R OBTAINS A LOAN—BUT DOES NOT REPAY.**

Though this lawsuit stems from a foreclosure in 2012, the debt and agreements underlying that foreclosure date back to at least 2004. Understanding that debt, along with the agreements signed by D&R and the Rushings, is crucial to the resolution of this case.

In October 2004, D&R needed money. So it sought and obtained a $625,000 loan from the bank. That loan—payable in installments—was to mature in 2009.[2] 1 CR 407, 422. In return, D&R pledged property it owned on Wade Road in Baytown as collateral, and signed a real estate lien note and deed of trust in favor of the bank. 1 CR 407–410 (**Tab E**) (Note); 1 CR 421–438 (**Tab F**) (Deed of Trust).[3]

---

[1] Most of the fabrication involves work for the energy industry (e.g., pipe fabrication, vessel fabrication, caster roll and steel mill roll rebuilding, and the like).

[2] D&R was the only debtor on the Note and Deed of Trust. *See, e.g.*, 1 CR 399, 407, 421, 438.

[3] Probably due to scanning, many of the documents in the clerk's record are difficult to read. For the Court's convenience, the appendix to this brief includes the more legible versions provided to the trial court.

Unsurprisingly for a commercial transaction, the Note and Deed of Trust contain a number of waivers. The Note, for instance, waived virtually all notices:

> Each Maker, surety and endorser of this Note expressly waives all notices, demands for payment, presentations for payment, notices of intention to accelerate the maturity, protest and notice of protest, as to this Note and as to each, every and all installments hereof.

1 CR 408. Likewise, the renewal of the Note contains similar waiver provisions for both D&R (the debtor) and the guarantors:

> [D&R] and any and all co-makers, endorsers, guarantors and sureties severally waive notice (including, but not limited to, notice of protest, notice of dishonor and notice of intent to accelerate and notice of acceleration), demand, presentment for payment, protest ….

1 CR 413. The Deed of Trust contains similarly expansive waivers.[4]

If D&R defaulted under the loan documents, the bank could foreclose on the collateral (i.e., the Wade Road property). The Deed of Trust contains a foreclosure process identical to the requirements in the Property Code. 1 CR 428–429, ¶ 14. Notably, any notice of the foreclosure sale only had to be served on the debtor

---

[4] For example:

> 11. Default and Acceleration. In the event [D&R] shall default in the prompt payment, when due, of the Indebtedness …, then, in any such event, [the bank] … without demand, presentment for payment, notice of nonpayment, grace, protest, notice of protest, notice of intent to accelerate the Indebtedness, notice of acceleration of the Indebtedness, or any other notice, all of which are hereby expressly waived by [D&R], may declare the entire unpaid balance and accrued interest on the Note and any other unpaid Indebtedness immediately due and payable, whereupon it shall be so due and payable.

1 CR 428, ¶ 11.

(D&R), and service of the notice was "complete and effective when [it] is deposited in the United States mail …." 1 CR 428, ¶ 14; *see also* 1 CR 437, ¶ 33.

Though the loan to D&R matured in 2009, it went unpaid. Instead, in March 2010, D&R renewed, modified, and extended the loan—with an outstanding balance of $503,025.30—to October 2011. 1 CR 411–420. But October 2011 came and went without repayment. Indeed, the bank apparently sent notices to D&R of its intent to accelerate the note because of the default in payments. 1 CR 483, at ¶ 7.

## C. D&R AGREES TO SELL THE NOTE AND DEED OF TRUST TO CS BANKERS.

Many, many months after the note matured, D&R was unable or unwilling to repay it. Then, in the summer of 2012, Texas Gulf Energy approached D&R about purchasing the fabrication facility, the mortgaged property, and, of course, the defaulted Note and Deed of Trust. By this time, D&R still owed more than $400,000 on the Note and many thousands more in delinquent taxes. 1 CR 399, 401. After years of having debt pile up, D&R (and the Rushings) now had a solution.

So, in July 2012, CS Bankers, an affiliate of Texas Gulf Energy at the time, purchased the Note and Deed of Trust. 1 CR 391–406 (**Tab G**) (Loan Sale Agreement). D&R joined in the Loan Sale Agreement and specifically consented to the transaction, which D&R admitted would result in direct economic benefit to

the company. 1 CR 399. D&R likewise acknowledged that, without its explicit consent and joinder, CS Bankers would not purchase the debt. *Id.*[5]

The logical goal of the transaction was for CS Bankers to pay the half-million dollars that D&R could not, obtain the Note and Deed of Trust, foreclose on the property, acquire the fabrication facility, and relieve D&R—and the Rushings—of the debt with which they were burdened.

## D.  CS BANKERS FORECLOSES ON THE WADE ROAD PROPERTY.

That goal materialized a month later. On August 14, 2012, under § 51.002 of the Texas Property Code and the terms of the Deed of Trust securing the Note, CS Bankers' attorney, Robert A. Schlanger, provided the required notice of the foreclosure scheduled for September 4, 2012. 1 CR 439–452 (**Tab H**). Specifically, Schlanger posted a Notice of Substitute Trustee's Sale at the courthouse in Harris County, Texas, the county in which the property is located, and designated Harris

---

[5] D&R made numerous other representations in the Loan Sale Agreement. For instance:

> [D&R] joins in the execution of this Agreement (a) to evidence [D&R's] consent to the transaction hereby contemplated, (b) to confirm that (i) true and correct copies of the Loan Documents are attached hereto …, (iii) the Loan Documents evidence all of the existing agreements between [D&R] and [Comerica Bank] pertaining to the Loan, (iv) the Schedule of Loan attached hereto and all information set forth thereon is true, complete and correct, (v) other than the maturity of the Loan on October 28, 2011 and the failure to pay taxes on the real property collateral, no event of default or event which could, with the giving of notice or the passage of time or both, constitute an event of default, has occurred under the Loan Documents …, (viii) the Loan Documents are valid and enforceable against [D&R] and the collateral identified therein ….

1 CR 399.

County as the county in which the property would be sold. 1 CR 441–442. Schlanger also filed a copy of the notice in the Harris County Clerk's office. 1 CR 443–444.

Schlanger then served written notice of the sale on D&R, the only debtor on the Note and Deed of Trust. 1 CR 439–440. Schlanger deposited a Notice of Posting (together with the Notices of Substitute Trustee's Sale) in the United States mail, postage prepaid and addressed to D&R at 6314 Wade Road, Baytown, Texas 77521, its last known address according to the loan documents. 1 CR 445–448; 1 CR 441–444.

CS Bankers foreclosed on September 4, 2012, and was the highest bidder at the foreclosure sale. 1 CR 440; 1 CR 449–452. In 2013, CS Bankers transferred the property to Fabricators, the current owner. 1 CR 648.

## E. THE LAWSUIT BEGINS.

On January 4, 2013, this litigation began. 1 CR 17–23. Texas Gulf Energy, CS Bankers, and the Rushings litigated for nearly a year with little progress.[6] Then, in December 2013, D&R intervened and, along with the Rushings, sued Fabricators, Hendry, and Smith. 1 CR 196–215.

---

[6] During this time, neither Fabricators, nor Hendry, nor Smith were parties to the lawsuit.

After appearing, Smith moved to dismiss all claims against him, including a claim of fraud based on misrepresentation. 1 CR 269–279. In response, the Rushings amended their petition to "clarify" their claims against Smith. 1 CR 286–306. They even included this language in their response to Smith's motion to dismiss: "Claims clarification: The following claims exist in the amended petition: fraud and conspiracy to commit fraud." 1 CR 283. Based in part on the Rushings' promises that they had proof of Smith's fraud and that it was "clear" he was involved in the foreclosure, the trial court denied the motion to dismiss. 1 CR 284; 1 CR 353.

Depositions taken four months later proved those promises were false. Indeed, both Penn Rushing (on behalf of himself and D&R) and Michael Rushing admitted that Smith had never made any representations to them at all. 1 CR 722–723. The same was true for Stephanie and Florence Rushing as well, both of whom had sued Smith. RR 9:7–14; 13:11–24. Despite those admissions, Smith was not dropped from the lawsuit.

Instead, only a couple of weeks after admitting that Smith had never met them or spoken with them, the Rushings filed yet another petition—their fourth— alleging the exact same fraud-by-misrepresentation claim. 1 CR 624–642; *see also*

RR 79:16–80:5 (amended petition "verbatim with the other [petition]."). That amended (yet nearly identical) petition also included a number of other claims:

| Asserted against Fabricators and Hendry[7] | <ul><li>Quiet title[8]</li><li>Fraud</li><li>Negligent misrepresentation</li><li>Breach of contract</li><li>Quantum meruit</li><li>Breach of fiduciary duty</li><li>Conversion</li><li>Conspiracy</li><li>Tortious interference</li></ul> |
|---|---|
| Asserted against Smith | <ul><li>Fraud</li><li>Conspiracy</li></ul> |

1 CR 624–642. Fabricators, Hendry, and Smith then moved for summary judgment on all claims asserted against them.

## F.   THE TRIAL COURT GRANTS THE SUMMARY JUDGMENTS.

In the summer of 2014, Texas Gulf Energy, CS Bankers, Fabricators, and Hendry moved for summary judgment on the propriety of the foreclosure. 1 CR 381–390; 1 CR 457–460; 1 CR 546–553. D&R then conceded that "there are no claims against [Fabricators] or Hendry regarding foreclosure – only that they conspired with [CS Bankers] and later ended up with the Property." 1 CR 603. In

---

[7] The Rushings also claim to have asserted a promissory estoppel claim. As discussed later, that claim was not properly pled.

[8] It is unclear whether D&R asserted a quiet title claim against Fabricators and Hendry. *See* 1 CR 603.

any event, the trial court granted summary judgment on August 28, 2014, and dismissed the foreclosure and quiet title claims. 1 CR 593; 2 CR 1967.

After several months of discovery, Fabricators, Hendry, and Smith then moved for final summary judgment.[9] 1 CR 643–718; 1 CR 816–840. After hearing, the trial court granted Smith's motions on October 31, 2014. 2 CR 1580. Shortly after, the trial court granted the motions filed by Fabricators and Hendry. 2 CR 1967.

By November 2014, all of the claims against Fabricators, Hendry, and Smith had been dismissed. Other than Smith's motion for sanctions, the only remaining claims were among Texas Gulf Energy, CS Bankers, and the Rushings. As a result, Smith set his motion for sanctions for an evidentiary hearing. 2 CR 1970–1971.

## G. THE TRIAL COURT SANCTIONS THE RUSHINGS AND THEIR ATTORNEY.

The trial court took up the motion for sanctions in January 2015. 2 CR 1970–1971; *see also* RR 5:1–11. At the hearing, the trial court heard testimony and admitted evidence regarding the merit and basis of the claims against Smith, as well as the repeated filing of petitions alleging claims known to be false or legally

---

[9] Notably, the Rushings never moved to compel a deposition or any other discovery from Fabricators, Hendry, or Smith. Indeed, the Rushings never even requested a deposition.

unsupportable. Specifically, the trial court heard testimony from Penn Rushing, Michael Rushing, Lester Smith, Tim Connolly, and Smith's counsel.[10] RR 2:4–23.

Under oath, the Rushings admitted that Smith had never communicated with or made any representations to them. RR 24:7–25:10; 39:14–41:12. Penn Rushing flatly declared, "Lester Smith never talked to me in his life." RR 38:17. The Rushings also admitted that they had communicated those facts to Gore before he filed (and repeatedly re-filed) the claims against Smith. RR 24:7–25:10; 39:14–41:12. Indeed, when Gore sued Smith on behalf of the Rushings, they "had been told that [Smith] wasn't directly there" [i.e., "involved"]. RR 14:17–15:6.

Without any evidence, Gore had to confess that he sued Smith solely to investigate him:

> The Court: Well, don't you have to have some sort of an affirmative act to support a conspiracy claim?
>
> Mr. Gore: **That is why we brought him in to investigate and look at that** based on e-mails[11] that we had - -
>
> The Court: Well, wait a minute. Under Rule 13, do you get to sue people to investigate stuff?

---

[10] Smith subpoenaed Stephanie and Florence Rushing, but they did not appear and testify; instead, they stipulated that Smith never made any representations to them. RR 9:4–14.

[11] Those emails do not contain *any* references to the Rushings, D&R, or the Wade Road property. *See* Ex. 5 (Plaintiff's).

10

Mr. Gore:   Under Rule 13, it has to be harassing or frivolous or other, you know, it has such an extreme - - it is so far out there, we would have to have no basis to do it at all.

RR 18:1–13 (emphasis added). Gore then admitted that he, in fact, had no basis at all to sue Smith:

The Court: Well, help me out with how you can accuse somebody of making an affirmative misrepresentation or failing to disclose some material fact when they had no communication, I mean, that's where I'm getting the disconnect here. And you've got to have one or the other of those to have a fraud claim, don't you?

Mr. Gore:   For the fraud claim; yes, sir.

The Court:  Okay. Well, then, if they didn't then by definition wouldn't a fraud claim be frivolous if you filed it under those circumstances?

Mr. Gore:   If there is direct - -

The Court:  Well, I just would like a "yes" or "no" answer to my question.

RR 15:19–16:8. The trial court never received a direct answer to its question. The answer came later, albeit implicitly, when Gore admitted Smith was sued with the idea that **"maybe we can come up with some cause of action."** RR 19:18–19 (emphasis added).

For his part, Smith testified—consistent with the Rushings—that he had "never made any representations to any of the Rushings." RR 45:5–10. Smith further testified that he believed his inclusion in the lawsuit amounted to a

11

"shakedown." RR 45:16–17. Later, on cross-examination, Gore asked Smith whether he thought the Rushings were trying to shake him down for money; Smith replied, "No, I don't think they are, I think you are." RR 53:19–22.

The trial court essentially agreed. After hearing evidence that Smith had incurred at least $33,250.00 in attorney's fees defending himself from the lawsuit, RR 71:23–72:2, the trial court sanctioned Gore and the Rushings that amount. The trial court also made the following findings (among others):

> The Court further finds that Defendants and Intervenor brought **groundless claims** against Lester H. Smith, and that those claims were brought in **bad faith** or for the **purpose of harassment**.

> The Court further finds that Defendants' and Intervenor's attorney, George W. Gore, **failed to conduct a reasonable inquiry** into the facts before filing claims against Lester H. Smith.

> The Court further finds that Defendants, Intervenor, and George W. Gore **acted in bad faith** by filing Defendants' and Intervenor's Third Amended Claims after being put on notice by the depositions of Penn Rushing and Michael Rushing that the claims asserted against Lester H. Smith were groundless.

2 CR 2025–2026 (emphasis added) (**Tab D**). The sanctions were not paid during the pendency of the lawsuit, but were placed into the registry of the trial court once the appeal was filed. 2 CR 1045–1046. After the sanctions hearing, the trial court also signed a summary judgment in favor of Texas Gulf Energy, CS Bankers, and Timothy Connolly. 2 CR 2027.

12

## H.     THE FINAL JUDGMENT.

The trial court then signed a final judgment in favor of Fabricators, Hendry, and Smith (as well as the other Appellees) on April 13, 2015. 2 CR 977–979; *see* **Tab A** (final judgment). D&R, the Rushings, and Gore filed this appeal on July 9, 2015. 2 CR 1010–1012; 2 CR 1047–1049.

## A. MOTIONS FOR SUMMARY JUDGMENT

Summary judgments are reviewed de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, this Court reviews both sides' summary judgment evidence and determines all questions presented. *See FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000). When a trial court's order granting summary judgment does not specify the grounds relied upon, this Court must affirm if *any* of the summary judgment grounds are meritorious. *Id.*

### 1. Traditional Summary Judgment.

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Park Place Hosp. v. Estate of Milo,* 909 S.W.2d 508, 510 (Tex. 1995).

### 2. No-Evidence Summary Judgment.

A no-evidence motion for summary judgment is essentially a directed verdict granted before trial, to which appellate courts apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750-51 (Tex. 2003). A party

seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the non-movant's claims. *Flameout Design & Fabrication Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The burden then shifts to the non-movant to raise a fact issue on the challenged elements. TEX. R. CIV. P. 166a(i).

## B.     SANCTIONS ORDER

A trial court's imposition of sanctions is reviewed for abuse of discretion. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (citing *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007)). An assessment of sanctions will be reversed only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Id.* The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. *In re Barber,* 982 S.W.2d 364, 366 (Tex. 1998).

## Summary of Argument

The trial court carefully considered—and properly resolved—several summary judgment motions. Neither D&R nor the Rushings supported their claims with either facts or law. The trial court's judgment should me affirmed.

First, D&R's wrongful foreclosure and quiet title claims fail because the trustee strictly complied with the Property Code and the Deed of Trust. The trustee properly posted (and properly sent the debtor) all required notices of foreclosure. D&R's argument that it never *received* the notice is irrelevant under both the Property Code and the Deed of Trust.

Second, the summary judgments properly disposed of all of the Rushings' remaining claims. There are no fact issues regarding any claims against Fabricators, Hendry, or Smith.

Third, the Rushings had ample time to conduct discovery prior to the summary judgments, and failed to preserve this complaint for appeal.

Fourth, the sanctions against Gore and the Rushings for repeatedly filing frivolous, groundless pleadings are supported by tremendous evidence and, in any event, neither Gore nor the Rushings lodged proper objections to them.

Finally, the Rushings waived any alleged error by failing to file an appropriate brief with proper citations to the law or the record.

Fabricators, Hendry, and Smith moved for summary judgment—both traditional and no-evidence—on the claims asserted against them.[12] As a result, the Rushings had to provide at least some evidence of their claims, and show that their claims did not fail as a matter of law. They could not do so then, and they cannot do so now.

## A. THE FORECLOSURE WAS PROPER.

In points of error one and two, D&R raises a myriad of supposed technical defects to invalidate the foreclosure; none survives scrutiny.[13] Nothing raised by D&R overcomes the presumption that all prerequisites to the foreclosure sale were properly performed. *See Saravia v. Benson*, 433 S.W.3d 658, 663 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

To prevail on its wrongful foreclosure claim, D&R must show that (1) an irregularity in the foreclosure sale (2) caused it damages. *Univ. Savings, Ass'n v. Springwoods Shopping Ctr.,* 644 S.W.2d 705, 706 (Tex. 1982). To lawfully foreclose,

---

[12] The lone exceptions are wrongful foreclosure and quiet title; Fabricators and Hendry moved only for traditional summary judgment on those claims.

[13] D&R admits that its wrongful foreclosure claim does not apply to Fabricators or Hendry. Brief of Appellants at 27. To be clear, neither Fabricators, nor Hendry, nor Smith were involved in the foreclosure. Because Fabricators currently owns the property, however, it has a concrete interest in having the trial court's judgment on the foreclosure affirmed, and has standing. *See, e.g.*, *Goswami v. Metropolitan Sav. and Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988).

a trustee must comply with the notice requirements in the deed of trust and those prescribed by law. *Houston Omni USA Co., Inc. v. Southtrust Bank Corp., N.A.*, 2009 WL 1161860, at *6 (Tex. App.—Houston [1st Dist.] Apr. 30, 2009, no pet.) (citing *Nat'l Commerce Bank v. Stiehl,* 866 S.W.2d 706, 708 (Tex. App.—Houston [1st Dist.] 1993, no writ)).

Here, the record proves that the trustee—Schlanger—complied with all notice requirements in the Texas Property Code and the Deed of Trust. Moreover, D&R failed to prove any damages stemming from the foreclosure.

### 1. D&R's wrongful foreclosure claim fails because the foreclosure notices complied with the Texas Property Code.

To foreclose on real property, trustees must comply with notice requirements established by law. *Nat'l Commerce Bank,* 866 S.W.2d at 708. Section 51.002 of the Property Code governs the sale of real property under a contract lien.[14] *See* TEX. PROP. CODE § 51.002 (**Tab I**). The relevant provisions here concern the required notice to the debtor:

> (b) …, notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:

> (1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;

---

[14] The parties agree that § 51.002 governed the foreclosure on the Wade Road property.

(2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and

(3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.

…

(c) The sale must begin at the time stated in the notice of sale or not later than three hours after that time.

TEX. PROP. CODE § 51.002(b), (c). The foreclosure notices in this case complied with each provision.

### a. *The notices identify the time of the foreclosure sale.*

First, contrary to D&R's primary argument, the foreclosure notice specifically identifies the time of sale as required by § 51.002(c). The Notice of Substitute Trustee's Sale states that Schlanger will "on **SEPTEMBER 4, 2012** … at the hour of **1:00 o'clock p.m.**, or within three (3) hours thereafter, on said day, sell the [property] …." 1 CR 441 (emphasis in original). That notice was indisputably sent via certified mail to D&R on August 14, 2012. 1 CR 445–448; *see also* 1 CR 439–440. As soon as Schlanger sent the notices, D&R had constructive notice of the sale, which is all the statute requires. *Kainer v. ABMC Corp.*, 2006 WL

407794, at *5 (Tex. App.—Houston [1st Dist.] Feb. 23, 2006, no pet.). So D&R was properly notified of the time of the sale.

To circumvent this fact, D&R argues that the Notice of Substitute Trustee's Sale was not included in the Notice of Posting letter sent by Schlanger. Brief of Appellants at 15–16. But this argument is a nonstarter.

As an initial matter, the letter from Schlanger—which D&R does not dispute was mailed—specifically says the sale is scheduled for September 4, 2012. 1 CR 445. The letter goes on to say that the "Notices of Substitute Trustee's Sales … are enclosed." 1 CR 446. And the Notices of Substitute Trustee's Sale undeniably identify the time the sale was to begin. 1 CR 441. The evidence in the record, then, firmly establishes that Schlanger mailed all required notices. The essence of D&R's contrary argument is that the Notices of Substitute Trustee's Sales are appended to Schlanger's affidavit as Exhibits B-1 and B-2, while the Notice of Posting letter is attached as Exhibit B-3. Presumably, D&R thinks the Notices of Substitute Trustee's Sales should have been appended yet again *after* the Notice of Posting letter in the summary judgment record. But D&R fails to explain how that would make any difference. Indeed, Schlanger's affidavit verifies that the Notice of Posting letter was sent, and the Notice of Posting letter identifies the notices it enclosed. The evidence could hardly be clearer.

Moreover, D&R claims it never received the Notice of Posting letter. *See, e.g.*, Brief of Appellants at 18. As a matter of logic, then, D&R could not provide any *evidence*—rather than conjecture—that the Notice of Posting did not contain what it plainly says it contained (i.e., the Notices of Substitute Trustee's Sale with the specific time of sale). Consequently, the record undeniably establishes that the notices sent to D&R identified the date and time of the sale.

### b. The notices identify the place of the foreclosure sale.

Second, D&R claims the foreclosure notices never identified the place of the foreclosure sale. This, too, is incorrect. The Notices of Substitute Trustee's Sale, which was included in the Notice of Posting letter sent by Schlanger to D&R, specifically identifies the place of sale as:

> The interior area of the first floor lobby of the Family Law Center together with certain covered areas located outside the Family Law Center (a Harris County Courthouse located at 1115 Congress Street, Houston, Texas), or as otherwise designated by the Commissioner's Court of Harris County, Texas.

1 CR 441. Notably, this is the area designated by the Harris County Commissioner's Court for sales to take place, as required by § 51.002(a). *See Saravia*, 433 S.W.3d at 664. Thus, D&R's second complaint regarding the notice of foreclosure fails to survive even basic scrutiny.

21

### c. The foreclosure notice identifies Schlanger as the substitute trustee.

Third, the foreclosure notices plainly identify Robert Schlanger as the substitute trustee. Under § 51.0075, the name and a street address for a trustee or substitute trustee shall be disclosed on the foreclosure notices. TEX. PROP. CODE § 51.0075 (**Tab J**). Here, the foreclosure notices state:

> WHEREAS, CS Bankers V LLC, a Texas limited liability company, the legal owner and holder of said Deed of Trust, in accordance with its terms, in writing removed the said James W. Goolsby, Jr., as Trustee and appointed **ROBERT A. SCHLANGER as Substitute Trustee** ….

1 CR 441 (emphasis added); *see also* 1 CR 443. Schlanger then signed each notice, identified himself as the substitute trustee, and provided his address and telephone number. *See* 1 CR442; *see also* 1 CR 444. Again, there is no defect.

### d. Schlanger's role as substitute trustee was perfectly legitimate.

Fourth, D&R misapprehends both the role of a substitute trustee and the Notice of Posting letter. D&R claims that by sending a letter that demanded payment on a debt, Schlanger could not then serve as the substitute trustee. Notably, D&R fails to provide any authority for this novel proposition. And, indeed, that is not the law.

Though trustees do owe both parties a duty of fairness and impartiality, that does not prevent the trustee from also representing one of the parties. *See, e.g.*,

*Powell v. Stacy*, 117 S.W.3d 70, 74 (Tex. App.—Fort Worth 2003, no pet.). And that is what happened here. CS Bankers retained Schlanger to send the Notice of Posting and alert D&R to the foreclosure sale. *See generally* 1 CR 445–447. In his letter, Schlanger does not identify himself as the substitute trustee because that was not the capacity in which he sent the letter. Enclosed in the letter, however, were the foreclosure notices identifying him as the substitute trustee and the person who would conduct the foreclosure sale. 1 CR 441; *see also* 1 CR 443. Nothing prevented Schlanger from serving in both capacities.

Still, D&R claims that "[t]he Rule is clear - - - you cannot have a dual role." Brief of Appellants at 17. Despite the supposed clearness of the rule, D&R provides no authority for it. Indeed, there is no such rule. Rather, Schlanger was only required to conduct the foreclosure sale fairly and not discourage bidding; he had no duty to take affirmative actions beyond that required by statute or the deed of trust to ensure a fair sale. *Peterson v. Black,* 980 S.W.2d 818, 822 (Tex. App.—San Antonio 1998, no pet.). Schlanger fulfilled his duties by strictly complying with the terms of the deed of trust. *Id.; First State Bank v. Keilman,* 851 S.W.2d 914, 925 (Tex. App.—Austin 1993, writ denied) (op. on reh'g). And there is no allegation that Schlanger did not conduct the sale fairly or that he discouraged bidding. So, when Schlanger complied with the Property Code and the Deed of Trust, he

fulfilled his obligation to D&R; the fact that Schlanger also previously represented CS Bankers is immaterial.

### 2. D&R's claim that it did not receive notice of the foreclosure does not support its wrongful foreclosure claim.

D&R's final substantive complaint under § 51.002 is that it never *received* notice of the foreclosure sale.[15] Like its other complaints, this too has been repeatedly rejected by Texas courts. Indeed, a decisive case authored by this Court and cited by D&R—*Adebo v. Litton Loan Servicing, L.P.*—squarely holds that "[t]he dispositive inquiry under section 51.002(e) … is not *receipt* of notice, but, rather, *service* of notice." 2008 WL 2209703, at *4 (Tex. App.—Houston [1st Dist.] May 29, 2008, no pet.) (emphasis in original). That decision could hardly have been a tough call for the Court; indeed, the plain language of § 51.002(e) says that "<u>Service</u> of a notice under this section by certified mail <u>is complete when</u> the notice is <u>deposited</u> in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address." TEX. PROP. CODE § 51.002(e)

---

[15] The factual merits of this claim are suspect. There is evidence that D&R did, in fact, receive notice of the foreclosure. *See* 1 CR 131 ("Penn Rushing responded to my email, acknowledged the notice of foreclosure and informed me that he would put the notice in D&R Constructors, Inc.'s file.").

(emphasis added). Many other courts have applied the plain language of the statute and reached the same, obvious conclusion.[16]

Moreover, "[t]he affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service." TEX. PROP. CODE § 51.002(e). Here, Schlanger's affidavit and the attached exhibits provide prima facie proof that D&R was served with the foreclosure notices by certified mail return receipt requested. 1 CR 439. Schlanger even included the return receipt. 1 CR 448. Under both the Property Code and the Deed of Trust, D&R had constructive notice of the foreclosure sale as soon as the notices were deposited in the mail on August 14, 2012. *See Lambert*, 993 S.W.2d at 835; *Adebo*, 2008 WL 2209703, at *4. There is no contradictory evidence.

Curiously, D&R correctly states *Adebo*'s holding: when a debtor alleges that the creditor failed to comply with § 51.002's notice requirements, the debtor must show that the creditor failed to *serve* the foreclosure notice. Brief of Appellants at

---

[16] *See, e.g.*, *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013); *Hill v. Fremont Inv. & Loan*, 2004 WL 1178607, *3 (Tex. App.—Dallas May 28, 2004, no pet.); *Lambert v. First Nat. Bank of Bowie*, 993 S.W.2d 833, 835 (Tex. App.—Fort Worth 1999, pet. denied); *Onwuteaka v. Cohen*, 846 S.W.2d 889, 892 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Brooks v. Bank of New York Mellon*, 2014 WL 1322822, at *4 (S.D. Tex. Mar. 31, 2014).

20. Yet D&R then cites affidavit testimony that it did not *receive* the notices—it never cites any evidence that the notices were never *served*.[17]

In sum, CS Bankers and Schlanger strictly complied with the Property Code.

### 3. D&R's wrongful foreclosure claim fails because the foreclosure notice complied with the Deed of Trust.

Because the foreclosure complied with the Property Code, D&R's only hope to save its wrongful foreclosure claim is to find a defect based on the Deed of Trust. But none exists.

Unfortunately, D&R's brief lists numerous supposed defects but does not identify whether the defect purportedly violates the Property Code, the Deed of Trust, or both. *See* Brief of Appellants at 21–27. As a practical matter, the notice requirements in the Deed of Trust mirror the requirements in the Property Code. 1 CR 429–429, ¶14. Thus, D&R's claims under the Deed of Trust (whatever those may be) fail for the same reasons they failed under the Property Code.

---

[17] Though it makes no difference here, courts place little probative weight on a party's self-serving statements that they did not receive the notice. *Rodriguez v. U.S. Bank, N.A.*, 2013 WL 5173125, at 3 (W.D. Tex. Sept. 12, 2013) (citing *Stanley v. CitiFinancial Mortg. Co., Inc.*, 121 S.W.3d 811, 817–18 (Tex. App.—Beaumont 2003, pet. denied)).

### *a. The guarantors were not entitled to notice of the foreclosure.*

That said, D&R does specifically raise one new complaint here: it claims the Deed of Trust was violated because the guarantors to the Note were not notified of the foreclosure sale. Brief of Appellants at 22. This argument has no merit.

Nothing in the Deed of Trust requires notice to be given to the guarantor of the Note—only the "debtor." 1 CR 429, ¶14(c). The only debtor mentioned in any of the loan documents is D&R. *See, e.g.*, 1 CR 399 (Loan Sale Agreement); 1 CR 410 (Note); 1 CR 418 (Note modification); 1 CR 438 (Deed of Trust). And there is no legal requirement that personal notice of a foreclosure be sent to persons not parties to the deed of trust. *Am. Sav. & Loan Ass'n of Houston v. Musick,* 531 S.W.2d 581, 588 (Tex. 1975). No guarantor here was a party to the Deed of Trust.

Moreover, Section 14 of the Deed of Trust—upon which D&R relies for its argument—tracks the language of § 51.002 of the Property Code regarding notice. And Texas courts interpret the reference to "debtor" in § 51.002 to **exclude** guarantors. *See generally Long v. NCNB-Texas Nat. Bank*, 882 S.W.2d 861 (Tex. App.—Corpus Christi 1994, no writ) (discussing construction of § 51.002 and its legislative history). There is no reason to think the parties to the Deed of Trust envisioned any other definition of "debtor."

But there are reasons to think the Deed of Trust likewise excludes guarantors from its definition of "debtor." Other references to "debtor" in the Deed of Trust confirm that interpretation.

For instance, § 30 states, "This Deed of Trust shall be a security agreement between Grantors, as the debtor, and Beneficiary as the secured party …." 1 CR 436. And the first page of the Deed of Trust defines "Grantors" only as the debtor, "D&R Constructors, Inc." 1 CR 421. Nowhere does the Deed of Trust define "debtor" to include any guarantor.

Indeed, the only time the word "guarantor" is used in the Deed of Trust is in § 21; but that provision does not reference any particular guarantors, does not define guarantors to mean "debtor," and does not otherwise advance D&R's argument.

In any event, the guarantors to the Note specifically waived the right to receive notices of any kind. *See* 1 CR 408; 1 CR 413. So even if the word "debtor" included guarantors, the guarantors here were not entitled to any notices.

### b. *None of the "other defects" identified by D&R supports its wrongful foreclosure claim.*

D&R goes on to list a number of "other defects" which, it claims, invalidate the foreclosure. None does. And D&R provides such a paucity of support, these supposed defects merit little discussion.[18]

First, D&R claims no amount was due on the Note. Brief of Appellants at 21. But that's not true. D&R admits it still owed approximately $435,000 on the Note in 2012. *Id.* at 3. And the Loan Sale Agreement—explicitly joined by D&R—includes a schedule of the loan and indicates an outstanding balance of $415,064.47 as of July 13, 2012. 1 CR 401. At that time, the loan was nine months overdue and in default. 1 CR 412. Thus, the evidence conclusively establishes that D&R still owed significant (overdue) sums when CS Bankers purchased the Note.

Second, D&R claims CS Bankers never provided it with contact information so that it could update its address. This, too, is incorrect. The Loan Sale Agreement—signed by D&R—contains an entire section on "notices" and specifically lists the address for CS Bankers. 1 CR 394–395. Perhaps just as importantly, there is no evidence that D&R ever needed, wanted, or tried to update its address. Indeed, D&R's address never changed. The only address D&R ever

---

[18] Because of the lack of citations to any authority or the record, it is unclear whether D&R believes these alleged defects violate the Property Code, the Deed of Trust, or both. To the extent there is any difference between the two, we address both.

had was explicitly listed in the Deed of Trust: 6314 Wade Rd, Baytown, Texas 77521. 1 CR 421; *see also* 1 CR 437, at ¶ 33. The Rushings confirmed the validity of that address many times.[19] *See, e.g.*, 1 CR 483, at ¶2. In short, D&R never provided an updated address to CS Bankers—not because it could not find CS Bankers' address, but because D&R had nothing to update. 1 CR 439–440; 1 CR 472.

Third, D&R claims the Note had been accelerated, but that acceleration was rescinded. Brief of Appellants at 23. Of course, D&R cites no evidence for this proposition. And, in any event, CS Bankers had no need to *accelerate* a Note that was many months *overdue*. *See* 1 CR 412. Plus, not only did the letter from Schlanger say that CS Bankers was accelerating the Note (1 CR 446, ¶ 6), D&R also waived any notice of intent to accelerate or acceleration. 1 CR 413. So acceleration of the Note is a non-issue.

Fourth, D&R claims the Notice of Posting letter was "defective" for a number of reasons, and that any of those reasons are sufficient to set aside the foreclosure. Their only authority for this argument is *Harwath v. Hudson*. In that case, a foreclosure was set aside because the notice requirements in the deed of trust had not been strictly followed. 654 S.W.2d 851, 854 (Tex. App.—Dallas 1983,

---

[19] *See* testimony of Penn Rushing, D&R's President, 1 CR 455–456 (depo. lines 45:22–46:2) (D&R never maintained a business address anywhere other than 6314 Wade Road in Baytown, Texas); *see also* CR 453, affidavit of Michael Rushing, D&R's Vice President ("The address is correct on the [certified mail receipt for the Notice of Posting] ….").

writ ref'd n.r.e.). *Harwath* does not support D&R's claim that the form of the Notice of Posting letter is defective, or that such a defect would merit setting aside the foreclosure. More importantly, even if it had some legal authority, none of the issues raised by D&R contains merit:

- Introductory paragraph – D&R fails to cite evidence of its claim that CS Bankers is a Nevada company. And even if CS Bankers were not a Texas limited liability company, D&R fails to cite any authority holding that such a typographical error would nullify the foreclosure. Indeed, D&R fails to even allege *how* such a typographical error caused any damages or otherwise undermined the foreclosure.

- Paragraph 2 – D&R claims the "failure" to include the amount(s) due on the Note is a defect. But nothing in the Deed of Trust requires notice of the precise amount due. Nor does the Property Code. *See, e.g. Powell*, 117 S.W.3d at 74 (noting that § 51.002 does not require the note holder to include the amount due).

- Paragraphs 3, 4, and 5 – D&R claims no contact information was provided for CS Bankers. As discussed above, this is incorrect. The contact information for CS Bankers had already been provided to D&R. 1 CR 394–395. Further, in the letter, Schlanger identifies himself as representing CS Bankers and invites D&R to contact him with any questions. 1 CR 445–447. And, finally, neither the Deed of Trust nor the Property Code impose any requirement to provide the lender's address in the notice.

- Paragraph 6 – D&R concedes that this paragraph notifies it that the debt is in default and is being accelerated (if necessary). D&R complains, however, that it does not identify *what* is in default. Yet the paragraph references the "Loan Documents" as defined on the first page of the letter. 1 CR 445–446. Even more, the subject of the letter specifically defines the loan at issue. 1 CR 445.

31

- Paragraph 7 – D&R apparently takes issue with this paragraph because it does not specify how to reinstate after acceleration. But, of course, D&R could have easily referenced the loan documents to identify the correct procedure. Plus, there is nothing about this paragraph that fails to comply with the Deed of Trust or the Property Code.

- Paragraph 8 – D&R claims the letter was not sent to the guarantors of the Note, as the paragraph indicates. Of course, as discussed above, there is nothing in the Deed of Trust or the Property Code that *requires* sending notice to a guarantor. So even if the notice was not sent to the guarantors, that does not undermine the foreclosure. Moreover, the paragraph expressly disclaims any obligation to give any notice other than what is required by the Deed of Trust or the Property Code. 1 CR 446.

In sum, D&R fails to identify any errors in the Notice of Posting letter that raise a fact issue on its wrongful foreclosure claim. Indeed, D&R failed to identify *any* defect in the foreclosure process.

4. **D&R failed to prove that any alleged irregularity in the foreclosure caused it any damages.**

Moreover, even if the foreclosure suffered from any substantive defect, that would not entitle D&R to the remedy it seeks—rescission of the foreclosure and return of the property. That remedy is an equitable one. And one that seeks equity, must do equity. *See Lambert*, 993 S.W.2d at 835–36 (citing cases).

In this case, to "do equity" D&R would have had to tender payment of the debt owed. In Texas, even if a substitute trustee's deed is void, "[t]ender of whatever sum is owed on the mortgage debt is a condition precedent to the

mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale." *James v. Wells Fargo Bank, N.A.*, 2014 WL 2123060 (S.D. Tex. May 21, 2014) (internal citations omitted); *see also Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Willoughby v. Jones*, 151 Tex. 435, 251 S.W.2d 508 (1952).

Here, there is no evidence that D&R ever tendered the debt it owed on the Note. Nor did D&R allege that all conditions precedent had occurred. As a result, even if there was a technical defect in the foreclosure, D&R still would not receive title to the property because it failed to tender payment of the half-million dollar debt it owes.

More still, D&R failed to prove that any alleged defect in the foreclosure caused or contributed to cause the property to be sold for a grossly inadequate price. *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.); *Am. Sav. & Loan Ass'n of Houston*, 531 S.W.2d at 587.[20] Thus, even if D&R sought damages from the foreclosure, it would not be entitled to that remedy either.

---

[20] To the extent a plaintiff seeks damages for wrongful foreclosure, they must show: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Sauceda*, 268 S.W.3d at 139. A "grossly inadequate selling price" would have to be so little as "to shock a correct mind." *Martins*, 772 F.3d 249.

### 5. Because the foreclosure was proper, D&R's quiet title claim fails as a matter of law.

Finally, D&R admits its quiet title claim is "secondary and follows any ruling related to foreclosure." Brief of Appellants at 27. In other words, if the foreclosure was proper, then the quiet title claim fails. That dooms D&R's quiet title claim.

A suit to clear title or quiet title relies on the invalidity of the defendant's claim to the property. *Longoria v. Lasater,* 292 S.W.3d 156, 165 n.7 (Tex. App.—San Antonio 2009, pet. denied). The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title. *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). The plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief. *Id.* The plaintiff must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove. *Id.*

Here, D&R's wrongful foreclosure claim was properly dismissed by summary judgment. The foreclosure, as discussed at length above, complied with the Property Code and the Deed of Trust. As a result, D&R has no right of ownership. That means CS Bankers lawfully acquired title to the property at the foreclosure sale. 1 CR 449–452. When CS Bankers later transferred the property to

Fabricators, it also transferred its good title. As a result, Fabricators has good and equitable title to the Wade Road property.

In addition, D&R seemingly admits that it does not have a quiet title claim against Fabricators or Hendry. Brief of Appellants at 27. In its passing discussion of quiet title, D&R plainly states "there are no claims against [Fabricators] or Hendry regarding foreclosure—only that they conspired with [CS Bankers] and later ended up with the [Wade Road property]." *Id*. D&R made that same admission to the trial court back in September 2014. 1 CR 603. Given D&R's admission that its quiet title claim is inextricably linked with its foreclosure claim, those statements alone are sufficient grounds to affirm Fabricators' ownership and title to the Wade Road property.

## B.     THE SUMMARY JUDGMENTS DISPOSED OF ALL CLAIMS.

In their third point of error, the Rushings claim the trial court's grant of summary judgment exceeded the relief requested. According to the Rushings, Fabricators and Hendry did not move for summary judgment on a promissory estoppel claim.[21] Brief of Appellants at 28.[22] The sum total of the Rushings' supposed promissory estoppel claim is:

---

[21] The Rushings did not assert a promissory estoppel claim against Smith.

[22] The Rushings' citation for this proposition is, "(see all summary judgment motions)." Brief of Appellants at 28.

<u>**Quantum Meruit**</u>

> The acts above show that D&R and the Rushings were deprived of their property, business and livelihood due to the actions and promises of TGE, TGFI, TGF, TC, and CSB. Under quantum meruit and promissory estoppel, D&R and the Rushings seek the return of their business and property or at least monetary damages equivalent to the loss of services, material and property.

1 CR 640–641 (Rushings' Third Amended Claims). That's it—a mere two words buried in a paragraph discussing quantum meruit, under a heading of quantum meruit, and pleading elements of quantum meruit. In fact, their third amended petition was the first and only time the Rushings made any mention—albeit murkily—of promissory estoppel.

In any event, the Rushings' argument that any promissory estoppel claim is still outstanding against Fabricators or Hendry fails for many reasons.

**1.     Fabricators and Hendry were entitled to summary judgment on the alleged promissory estoppel claim because they did not make any promises to the Rushings.**

First, the trial court properly dismissed the Rushings' supposed promissory estoppel claim via summary judgment. Though a motion for summary judgment generally must stand or fall on the grounds presented in the motion, there is a significant caveat: summary judgment is proper where a defendant has conclusively disproven an element central to all causes of action or an unaddressed cause of action derivative of the addressed causes of action. *Smith v. Heard*, 980 S.W.2d

693, 697–98 (Tex. App.—San Antonio 1998, pet. denied); *see also Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428, 435–36 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Dubose v. Worker's Med., P.A.*, 117 S.W.3d 916, 922-23 (Tex. App.—Houston [14th Dist.] 2003, no pet.). That makes sense. Why waste judicial resources on claims that have been legally or factually disproven?

Here, the Rushings alleged two causes of action that share overlapping elements: fraud and promissory estoppel. Fabricators and Hendry indisputably moved for—and obtained—summary judgment on the Rushings' cause of action for fraud. In the process, they proved that neither Fabricators nor Hendry made a material misrepresentation relied on by the Rushings; indeed, no representations were *ever* made to the Rushings. *See* 1 CR 651–652, 669–694. In their response, the Rushings chose not to controvert that evidence and abandoned their fraud claim. 2 CR 1383–1393.

Similar to a fraud claim, promissory estoppel requires a promise that is relied on by the promisee. *See English v. Fischer,* 660 S.W.2d 521, 524 (Tex. 1983); *Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). So for the Rushings to recover under either fraud or promissory estoppel, they had to prove that Fabricators or Hendry made a representation (or promise) that they relied on to their detriment; they are common elements to both

causes of action. By admitting that neither Fabricators nor Hendry made any representations to them that they relied on to their detriment, the Rushings established Fabricators' and Hendry's entitlement to summary judgment on their promissory estoppel claim as a matter of law.

This case is remarkably similar to *Ortiz v. Collins*. 203 S.W.3d 414 (Tex. App.—Houston [14th Dist.] 2006, no pet.). In that case, like here, a plaintiff pled claims for both fraud and promissory estoppel. *Id*. at 423. The defendant moved for summary judgment on the fraud claim, but did not expressly move for summary judgment on the promissory estoppel claim. *Id*. Still, the trial court granted summary judgment on both claims. *Id*. The court of appeals affirmed. The Fourteenth Court concluded that summary judgment was proper because the defendant's motion negated the fraud claim and, by doing so, necessarily negated the promissory estoppel claim because the two share overlapping elements. *Id*. Thus, the defendant's motion was broad enough to cover (and disprove) the promissory estoppel claim that was not expressly presented in the motion. *Id*.

So it is here. The Rushings could not prevail on their fraud claim because there were no promises; they could not prevail on their promissory estoppel claim for the same reason. Thus, the motions for summary judgment were broad enough

to cover the promissory estoppel pleading, and there are no remaining claims pending against Fabricators or Hendry.

### 2. The Rushings waived any complaint to Fabricators' and Hendry's summary judgments when they failed to file exceptions.

Second, the Rushings failed to except to the motions for summary judgment, which were entitled "final" and were unambiguously meant to dispose of all claims. Indeed, in their prayer for relief, Fabricators and Hendry asked the trial court to "grant their motions for **final** summary judgment, [and] **dismiss all** [the Rushings'] remaining claims against them ...." 1 CR 661 (emphasis added). Nevertheless, the Rushings chose not to mention promissory estoppel in their response. The Rushings' deliberate silence then undermines their claim now that the summary judgments did not dispose of all claims. If there was a claim pending for which the Rushings felt Fabricators or Hendry did not move for summary judgment, they should have brought that to the trial court's attention. And if they were confused as to what claims Fabricators or Hendry were moving on, the Rushings had an obligation to except to the motions. *See McConnell v. Southside Independent School Dist.*, 858 S.W.2d 337, 342 (Tex. 1993). Because they failed to file an exception to clarify which grounds were presented in the motions, the Rushings waived their right to complain to this Court. *Id.* at 342–43.

### 3. The Rushings abandoned any promissory estoppel claim.

Third, the Rushings had yet another chance—indeed, an obligation—to alert the trial court to the supposed promissory estoppel claim. But, again, they didn't.

After it granted final summary judgment in favor of Fabricators and Hendry, the trial court requested briefing regarding what claims, if any, were still pending. (Undoubtedly, the trial court wanted to avoid this precise situation.) In response, the Rushings filed a "Brief on Current Claims" that omits any reference to any claims still pending against Fabricators or Hendry. 2 CR 2012–2014. Though the Rushings do claim that "Plaintiff's multiple summary judgment motions fail to address the promissory estoppel claims," neither Fabricators nor Hendry were plaintiffs. And the Rushings did not define "plaintiffs" to include either Fabricators or Hendry. Indeed, the Rushings repeatedly refer to Fabricators and Hendry as "third party defendants," "TGF," and "Hendry"—but never as "plaintiffs." 2 CR 2013.

Had the Rushings alerted the trial court to a pending promissory estoppel claim against Fabricators or Hendry, the trial court could have addressed that claim prior to this appeal. But the Rushings chose not to. Thus, the Rushings abandoned that cause of action and waived any challenge to the summary judgment on that

issue because they represented that no claims were outstanding against either Fabricators or Hendry after the trial court granted the final summary judgments.

### 4.    The Rushings failed to adequately plead promissory estoppel.

Fourth, the alleged promissory estoppel claim is not properly pleaded. A proper pleading must "consist of a statement in plain and concise language of the plaintiff's cause of action . . . ." TEX. R. CIV. P. 45. Rule 45 requires that a petition give fair notice of the plaintiff's claims. *City of Houston v. Howard*, 786 S.W.2d 391, 393 (Tex. App.—Houston [14th Dist.] 1990, writ denied). A court must be able, from an examination of the plaintiff's pleadings alone, to ascertain with reasonable certainty the elements of a cause of action and the relief sought with sufficient particularity upon which a judgment may be based. *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979).

Here, the Rushings' petition fails to adequately allege the elements of a cause of action for promissory estoppel. The Rushings do not allege any promise made by Fabricators or Hendry that they relied on to their detriment. Indeed, the only thing the Rushings did was hide legalese within a claim that has nothing to do with promissory estoppel. Thus, the mere inclusion of the words "promissory estoppel" is insufficient to properly plead a cause of action. *See, e.g.*, *Coffey v. Johnson*, 142 S.W.3d 414, 417 (Tex. App.—Eastland 2004, no pet.).

Consequently, the Court should affirm the summary judgment on the promissory estoppel claim as to Fabricators and Hendry.

## C.   THE RUSHINGS HAD ADEQUATE TIME FOR DISCOVERY.

In point of error four, the Rushings say they did not have adequate time for discovery; as a result, they claim the no-evidence motions for summary judgment were premature. This argument fails for several reasons.

First, the Rushings failed to preserve this issue for appeal. When a party contends it has not had adequate time for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *Triad Home Renovators v. Dickey*, 15 S.W.3d 142, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The Rushings did neither.

Second, the Rushings requested only minimal discovery from Fabricators, Hendry or Smith. They never asked for a deposition. And they never moved to compel any discovery from Fabricators, Hendry, or Smith. In short, the Rushings never presented this complaint to the trial court for a ruling—mainly because the Rushings had no discovery complaint to present to the trial court. The Rushings cannot claim the trial court erred when they never asked it to do anything.

Third and finally, the Rushings had plenty of time for discovery. The lawsuit was nearly two years old before the trial court granted a no-evidence summary

judgment. And the Rushings had at least six months to obtain discovery from Fabricators, Hendry, and Smith. Just because the Rushings chose to conduct very limited discovery does not mean they did not have enough time to do more.

**D.     THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT ON THE REMAINING CLAIMS IS UNASSAILABLE.**

In point of error five, the Rushings complain (very) generally about a number of causes of action. None had merit, and all were properly dismissed.

### 1.     The Rushings admit there were no misrepresentations.

The trial court's grant of summary judgment on the Rushings' fraud[23] and negligent misrepresentation[24] claims was proper because the Rushings admitted that neither Fabricators, nor Hendry, nor Smith ever made any representations to them. 1 CR 650–652; 1 CR 822–824. Indeed, the Rushings failed to even address

---

[23] To recover on an action for fraud, a party must prove that (1) a material representation was made, (2) the representation was false, (3) when the speaker made the representation, he knew it was false or made it recklessly without knowledge of the truth and as a positive assertion, (4) the speaker made it with the intention that it should be acted upon by the party, (5) the party acted in reliance upon it, and (6) the party thereby suffered injury. *Lundy v. Masson*, 260 S.W.3d 482, 492 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing cases).

[24] A cause of action for negligent misrepresentation requires: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

these causes of action in their response to the motions filed by Fabricators,[25] Hendry, and Smith. *See* 2 CR 1383–1393; 2 CR 1461–1468.

The Rushings did not believe there was a fact issue when they filed their responses; they cannot change their minds now.

### 2. The Rushings admit there were no contracts.

The Rushings did not argue that they ever had a contract with Smith. And they later admitted they did not have a contract with either Fabricators or Hendry. 1 CR 653. The trial court's summary judgment on this issue, then, is correct.

### 3. The Rushings' quantum meruit claim fails because they did not provide services or materials.

The Rushings next claim that the trial court erred when it accepted that quantum meruit applies only to services and materials, not to real property. Brief of Appellants at 35. But the trial court was right. To recover under quantum meruit, a claimant must render valuable services or furnish materials. *See, e.g.*, *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (citing cases). The Rushings, however, premised their quantum meruit claim on

---

[25] As a matter of law, Fabricators could not have made any representations to the Rushings in 2012 because, as Penn Rushing admitted, that entity did not exist until 2013. *See* 1 CR 679 ("[t]here wasn't a company then.").

their theory that they provided their *real property* to an alleged joint venture.[26] As a matter of law, then, their quantum meruit claim fails because they did not claim to have provided services or materials.[27] Undeterred, the Rushings cite two cases they claim support their notion that quantum meruit can be applied to real property. Neither does.

In the first case, *Miller v. Graves*, an owner of an interest in land pledged her interest to her attorney as payment to represent her. 185 S.W.2d 745, 745-46 (Tex. Civ. App.—Fort Worth 1945, writ ref'd). The attorney provided the agreed-upon services, but the landowner refused to convey the interest in the land as promised. The attorney then sued to recover his fees for services rendered. *Id.* at 745-46. The *Miller* court only briefly discussed quantum meruit, but held that the attorney could obtain a personal judgment (but not a conveyance of the real property) for the value of his *services*. *Id.* at 748-49. Notably, the attorney provided *services*, not real property, and the pledge of real property was unrelated to the court's quantum meruit holding.

---

[26] Because the Rushings claim they provided their real property under the alleged joint venture agreement, it is doubtful they could recover under quantum meruit in any event. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005).

[27] In reality, the Rushings' quantum meruit claim is simply a rehash of their wrongful foreclosure and quiet title claims.

The second case, *Scott v. Walker*, is likewise unavailing. In that case, a widow brought suit based on services rendered by herself and her deceased husband, and she sought to have real property conveyed to her. 141 Tex. 181, 170 S.W.2d 718 (1943). The court agreed that she could use the remedy of quantum meruit to prevent unjust enrichment for any services she rendered, but specifically denied any recovery of the real property in question. *Id.* at 185-86. Again, the only basis for quantum meruit was the *services* rendered; the real property had not been provided by the widow and did not form the basis of her quantum meruit claim.

In short, there is no authority for the Rushings' idea that quantum meruit can be applied to real property; thus, the trial court properly granted summary judgment.

### 4. Neither Fabricators nor Hendry had a fiduciary relationship with the Rushings.

Next, the Rushings take issue with the trial court's summary judgment on their breach of fiduciary duty claim.[28] Simply put, the Rushings admit they never had a fiduciary relationship with Hendry or Fabricators.

---

[28] The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach. *Lundy*, 260 S.W.3d at 501. Due to its extraordinary nature, the law does not recognize a fiduciary relationship lightly. *See, e.g.*, *Willis v. Donnelly,* 199 S.W.3d 262, 278 (Tex. 2006).

Fiduciary relationships can be either formal or informal. *See, e.g.*, *Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980). For an informal fiduciary relationship to exist in a business transaction, the relationship must exist *before and apart* from the transaction that creates the lawsuit. *See, e.g.*, *Willis*, 199 S.W.3d at 277. But Hendry had *no* relationship with the Rushings—whether before or during the transaction at issue. 1 CR 653–654, 680 (168:19–21, 169:2–4), 690 (129:13–22). And Fabricators did not exist until after the transaction. 1 CR 679. Thus, no informal fiduciary relationship existed.

Moreover, no formal fiduciary relationship existed. The Rushings admit neither Hendry nor Fabricators were part of the alleged joint venture. 1 CR 674 (126:15–25), 675 (144:17–20), 676 (155:21–156:5). And the Rushings provided no evidence (or even allegations) of any other formal fiduciary relationship between the parties. Thus, the Rushings' cause of action for breach of fiduciary duty fails.

### 5.    The Rushings had no personal property to convert.

The Rushings next claim that they adduced more than a scintilla of evidence that Fabricators or Hendry converted the personal property of Michael Rushing. They did not.

A claim for conversion requires the plaintiff to show (1) title, (2) right to possession, and (3) a demand for return of the property unless the possessor's acts

manifest a clear repudiation of the plaintiff's rights. *Schwartz v. Pinnacle Communications*, 944 S.W.2d 427, 432 (Tex. App.—Houston [14th Dist.] 1997, no writ).

Importantly, the Rushings did not have title or a right to possess any of the personal property they claim was converted. The Rushings admit that the alleged personal property was located at the Wade Road facility. Brief of Appellants at 41. As a result, all of that personal property was subject to the Deed of Trust. 1 CR 697–698 (50:10–52:18); *see also* 1 CR 421. By executing that Deed of Trust, D&R (owned and controlled by the Rushings) conveyed a security interest in not only the real property, but also:

> all goods, equipment, fixtures, inventory, machinery, furniture, furnishings and other personal property that is now owned or hereafter acquired by Grantors and now or hereafter affixed to, or located on, the above described real estate and used or usable for any present or future operation of any building or buildings now or hereafter located on said lands . . . .

1 CR 421. As an initial matter, then, the Rushings forfeited their title and right to possess the personal property via the foreclosure.

That leads to the second problem: the Rushings have no evidence that any of the personal property actually belonged to them individually, rather than to D&R. Indeed, the Rushings never specifically identify *what* personal property was converted. The Rushings even admit that there was a dispute between D&R and

48

the individual Rushings regarding what personal property belonged to whom. 2 CR 1388. Unless the Rushings could provide *evidence* of what personal property belonged to Michael Rushing (or any other individual Rushing) rather than D&R, the trial court had no choice but to decide that the personal property was subject to the Deed of Trust.

Lastly, even if the Rushings could identify specific personal property not subject to the Deed of Trust, there is still no basis for a conversion claim. The Rushings admit they were given an opportunity to take personal property that they identified as theirs, and that Hendry never prevented them from taking anything. 1 CR 693–694 (132:7–133:24). So, no conversion.

**6. The Rushings cannot maintain a standalone cause of action for civil conspiracy.**

The Rushings claim they can maintain an independent cause of action for civil conspiracy. They cannot. Indeed, "[a]llegations of conspiracy are not actionable absent an underlying overt unlawful act or purpose." *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997). That is because it is not the conspiracy itself, but an injury to the plaintiff resulting from an underlying act done pursuant to the common purpose that gives rise to a cause of action for civil conspiracy. *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex. 1979). In

other words, "recovery is not based on the conspiracy; instead, it is based on an underlying tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).[29]

As discussed throughout this brief, the Rushings' tort claims all fail; thus, there is no underlying claim upon which to build a conspiracy claim. When the trial court granted summary judgment on those tort claims, it also had to dismiss the conspiracy claims. *See Ortiz*, 203 S.W.3d at 422-23 ("Because summary judgment was proper on [the] underlying fraud claim …, summary judgment was proper on [the] conspiracy to defraud claims as well."). The trial court's judgment is correct.

### 7. The Rushings had no contracts with which Fabricators or Hendry could interfere.

To prove tortious interference, the Rushings had to show: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred. *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995).

First of all, there was no contract with which Fabricators or Hendry could interfere: the trial court determined that the letter of intent was not a valid

---

[29] This is hardly a novel concept. Hordes of cases say the same thing. *See, e.g.*, *Staples v. Merck & Co., Inc.*, 270 F. Supp.2d 833, 845 (N.D. Tex. 2003); *Leigh v. Danek Med., Inc.*, 28 F. Supp.2d 401, 404 (N.D. Tex. 1998) (citing *Fisher v. Yates*, 953 S.W.2d 370, 381 (Tex. App.—Texarkana 1997, no writ)).

contract. 2 CR 1972. Second, to support this claim, the Rushings alleged that Fabricators and Hendry "conspired to interfere and make it impossible to make payments due under the Binding Letter of Intent as well as violating other contractual obligations." 1 CR 639. But the Rushings were not even sure what that meant, and they certainly offered no evidence of it.

For instance, when asked what Hendry did to "conspired to interfere," Penn Rushing initially said, "Nothing." 1 CR 682 (174:21–24). He later said "I can't tell you what [Hendry's] active role was involved in that, so . . . ." 1 CR 683 (177:25–178:4). His third different answer was, "[Hendry] obviously agreed that he would buy the [Wade Road property]." 1 CR 683 (177:3–8). But even if true, Hendry's agreement to purchase the property months after the foreclosure is not a basis for tortious interference.

In their summary judgment response, the Rushings claimed that "Brian Hendry knew that [the Rushings] and [Texas Gulf Energy] were joint venture partners and had a lease for the [Wade Road property]." 1 CR 1389. But the Rushings provide no evidence of this, and, quite simply, cannot say what Hendry knew or did not know. They also claim—again without support—that Hendry knew of contracts between the Rushings and Texas Gulf Energy. They then leap from this supposition to their claim that Hendry interfered with those contracts.

51

What is missing, however, is any explanation or evidence of *how* Hendry interfered with any alleged contracts.

In any event, tortious interference requires proof that the defendant intended to interfere with the contract. *Southwestern Bell Telephone Co. v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex. 1992). Here, the Rushings have no evidence to support any intentional interference with any alleged contracts.

Like all of the other claims discussed above, the trial court properly granted summary judgment on this one too. Consequently, the trial court's summary judgments should be affirmed.

### E. GORE AND THE RUSHINGS REPEATEDLY FILED GROUNDLESS PLEADINGS, AND THE TRIAL COURT PROPERLY SANCTIONED THEM.

In their sixth point of error, Gore and the Rushings claim the trial court's imposition of monetary sanctions against them was improper. But the trial court had ample evidence that Gore and the Rushings violated Rule 13 of the Rules of Civil Procedure and Chapter 10 of the Civil Practice and Remedies Code.

#### 1. Sanctions are appropriate under Rule 13 and Chapter 10.

Rule 13 authorizes a trial court to impose sanctions against an attorney, a represented party, or both, who file a pleading that is either (1) groundless and brought in bad faith; or (2) groundless and brought for the purpose of harassment. *See* TEX. R. CIV. P. 13. The rule defines "groundless" as having "no basis in law

or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." TEX. R. CIV. P. 13. One purpose of the rule is to check abuses in the pleading process—that is, to ensure that at the time the challenged pleading was filed, the litigant's position was factually grounded and legally tenable. *Appleton v. Appleton,* 76 S.W.3d 78, 86 (Tex. App.—Houston 2002 [14th Dist.], no pet.). To determine whether Rule 13 sanctions are proper, the trial court must examine the facts and circumstances in existence at the time the pleading was filed. *Elkins v. Stotts–Brown,* 103 S.W.3d 664, 668 (Tex. App.—Dallas 2003, no pet.).

Similarly, to award sanctions under Chapter 10, it must be shown that: (1) the pleading or motion was brought for an improper purpose; (2) there were no grounds for the legal arguments advanced; or (3) the factual allegations or denials lacked evidentiary support. *See* TEX. CIV. PRAC. & REM. CODE § 10.001; *Low v. Henry*, 221 S.W.3d at 614. Chapter 10 specifies that one of the aims for imposition of sanctions for the filing of frivolous or groundless pleadings is to "deter repetition of the conduct or comparable conduct by others similarly situated." TEX. CIV. PRAC. & REM. CODE § 10.004(b). The phrase "improper purpose" is the equivalent of "bad faith" under Rule 13. *See* TEX. R. CIV. P. 13; *cf. Save Our*

*Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist. ex rel. Bd. of Directors,* 198 S.W.3d 300, 321 (Tex. App.—Texarkana 2006, pet. denied).

The trial court references both Rule 13 and Chapter 10 in its sanctions order. 2 CR 2025–2026. And both rules support sanctions for the conduct here.

### 2. Gore and the Rushings repeatedly filed pleadings containing a fraud claim they *knew* was meritless.

Gore and the Rushings say the trial court's sanction is inappropriate because they made a good-faith argument to extend existing law. Brief of Appellants at 45. Thus, they claim, their pleadings against Smith were not "groundless." *Id.* But, as the trial court pointed out, this "just doesn't wash." RR 80:21–22.

To determine if a pleading was groundless—that is, filed for an improper purpose—the trial court must objectively ask whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim at the time the suit was filed. *Robson v. Gilbreath*, 267 S.W.3d 401, 405 (Tex. App.—Austin 2008, pet. denied). In sum, "groundlessness" turns on the legal merits of a claim. *Id.*

Though Gore and the Rushings now claim they advocated for an extension of civil conspiracy to encompass a stand-alone cause of action against a "puppet master," that is not what they argued to the trial court. *See generally* 2 CR 1566–1569. Instead, Gore and the Rushings filed numerous pleadings—including four petitions—that stated Smith was liable for fraud and conspiracy. *See* 1 CR 196 (first

petition); 1 CR 286 (first amended); 1 CR 330 (second amended); 1 CR 624 (third amended). A fraud claim requires a material misrepresentation. *Lundy*, 260 S.W.3d at 492. But the Rushings knew when they sued Smith that he had not made any misrepresentations to them; indeed, there was never *any* contact between them. RR 24:7–25:10; 39:14–41:12. And the Rushings informed Gore of this fact *before* the lawsuit was filed in December 2013. *Id.* As a result, both Gore and the Rushings knew that every petition they filed—all four of them—contained claims that were absolutely untrue. That is sanctionable. *See Appleton*, 76 S.W.3d at 86.

At the sanctions hearing, Gore even admitted he knew fraud requires a misrepresentation—something the he and the Rushings *knew* Smith had never made. RR 15:19–19:17. And conspiracy requires an underlying tort—something the Rushings and Gore *knew* did not exist. *Id.* So even if the Rushings are right and their third amended petition only pled a claim for conspiracy to commit fraud— which is dubious—that is a claim that does not exist (i.e., meritless). And that still would not account for the other three petitions that alleged claims known to be false. Simply put, the legal merits of the fraud and conspiracy claims were zilch.

Under both Rule 13 and Chapter 10, these pleadings were groundless; the allegations against Smith lacked evidentiary support and were *known* to be false when they were filed, and refiled, and refiled, and refiled. Gore and the Rushings

repeatedly and deliberately ignored their obligation to ensure that their filings were factually grounded and legally tenable. *See Appleton*, 76 S.W.3d at 86. The trial court was right to sanction them for their conduct.

### 3. The monetary sanction is not excessive and is supported by considerable evidence.

Next, Gore and the Rushings challenge the amount of the sanction as "excessive" and without evidence. They initially claim there was no evidence of the attorney's fees awarded because Smith's counsel rested before presenting that evidence. This argument fails for many reasons.

First, neither Gore nor the Rushings objected to the presentation of evidence after Smith's counsel rested. RR 68:1–25. The trial court specifically requested testimony from Smith's counsel regarding the amount and reasonableness of the fees incurred. *Id.* If Gore or the Rushings wanted to object to the evidence of attorney's fees, that was the time to do it. The failure to object waived any complaint. *See* TEX. R. APP. P. 33.1(a).

Second, the right of a party to reopen its case and introduce additional evidence is within the sound discretion of the trial court. *Apresa v. Montfort Ins. Co.*, 932 S.W.2d 246, 249 (Tex. App.—El Paso 1996, no writ) (citing cases). Given that neither Gore nor the Rushings objected, there was no abuse of discretion for the trial court to admit the evidence. That is especially true when Gore and the

Rushings later adversely called Smith's counsel and elicited the same information regarding attorneys' fees. RR 72:1–73:23.

Third, the trial court did not *need* any evidence of attorney's fees upon which to base the sanction. When awarded as a sanction, the *amount* of attorney's fees is solely within the discretion of the trial court. *Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex. 1984). Even if Smith had presented no evidence of his fees, the trial court's sanction would still stand. *See Glass v. Glass*, 826 S.W.2d 683, 688 (Tex. App.—Texarkana 1992, writ denied) (holding there is no need to prove attorney's fees when they are assessed as a sanction).

Fourth, even though it was not required, Smith's counsel testified extensively regarding the apportionment of reasonable and necessary attorney's fees between Smith, on the one hand, and Fabricators and Hendry, on the other. *See, e.g.*, RR 71:11–72:2; 73:19; 75:21–78:9; *see also Miller v. Armogida*, 877 S.W.2d 361, 365 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding when attorney's fees are assessed as sanctions, no proof of necessity or reasonableness is required). Gore and the Rushings provided no contrary evidence.

Fifth and finally, despite their complaint that the trial court's sanction was "excessive," neither Gore nor the Rushings offered any evidence of a different, less "excessive" amount. Gore could have offered rebuttal testimony, but he chose

not to. Or Gore and the Rushings could have called an attorney's fees expert to offer rebuttal testimony, but they chose not to do that either. Without offering any contrary evidence, they can hardly complain now about the amount of the sanction.

### 4. The sanction must be affirmed.

In short, the numerous pleadings filed by Gore and the Rushings were groundless. Additionally, there is extensive evidence of reasonable and necessary attorney's fees in the record. Thus, the trial court's award of $33,250 in fees as a sanction is justified. Moreover, neither Gore nor the Rushings raised any other challenge to the sanction or the sanction order. Thus, they waived any other complaints. *See Alexander v. Alexander*, 956 S.W.2d 712, 714 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (collecting authority).

### F. APPELLANTS WAIVED ANY ERROR BY FAILING TO FILE A PROPER BRIEF.

Finally, while Fabricators, Hendry, and Smith have labored to address all of the Rushings' arguments, it is exceedingly difficult to do so given the woeful inadequacy of their brief. The Rushings repeatedly fail to cite the record, and the citations they do give are often incorrect. Moreover, the Rushings rely almost exclusively on arguments devoid of citations to relevant legal authority.

As but one example, the Rushings spend six pages listing "Other Defects" that supposedly justify setting the foreclosure aside. But those six pages contain

virtually no substantive citations. And some of their citations simply do not exist. *See, e.g.*, Exhibits E & H to Brief of Appellants.

Even when the Rushings do cite authority, it is little better. One cite offered by the Rushings is: "see all summary judgment motions." Brief of Appellants at 28. Another cite references more than 100 pages of the record. *Id.* at 30. As do others. *See, e.g., id.* at 18 and 35. And the Rushings' favorite citation seems to be "Affidavits," which appears throughout their brief. *See, e.g.*, Brief of Appellants at 11, 23, 30, 31 (three times), 32 (twice), 33, 34 (three times), 35 (three times), 41, 42. Given that there are more than 3,000 pages in the clerk's record—and countless affidavits in those pages—this citation offers no guidance.

These deficiencies, together with the rambling, opaque arguments made throughout the Rushings' brief, waives any error in the trial court. Under Texas Rule of Appellate Procedure 38, the appellant's brief must contain a clear and concise argument, including appropriate citations to authority and the record. TEX. R. APP. P. 38.1(e), (h). Failure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint. *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.—Dallas 2012, pet. denied) (citing cases). Similarly, failure to provide citations to the record also results in

waiver of the issue on appeal. *See* TEX. R. APP. P. 38.1(i); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex. 1994).

It is the Rushings' burden to present and explain their assertions of error. Here, the Rushings essentially invite the Court to perform an independent review of the record and the applicable law, and then determine whether there was error. Not only should the Court decline that invitation, it must. *See, e.g., Green v. Kaposta,* 152 S.W.3d 839, 841 (Tex. App.—Dallas 2005, no pet.); *Valadez v. Avitia,* 238 S.W.3d 843, 845 (Tex. App.—El Paso, 2007, no pet.); *Coble v. Adams*, 2014 WL 6602480, at *2–3 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.) (mem. op.).

## G. PRAYER

Appellees Texas Gulf Fabricators, LLC, Brian G. Hendry, and Lester H. Smith respectfully request the Court affirm the trial court's judgment.

Respectfully submitted,

**DOBROWSKI, LARKIN & JOHNSON L.L.P.**

By:    */s/ Cody W. Stafford*
         Paul J. Dobrowski
         State Bar No. 05927100
         *pjd@doblaw.com*
         Cody W. Stafford
         State Bar No. 24068238
         *cstafford@doblaw.com*
4601 Washington Ave, Suite 300
Houston, Texas 77007
(713) 659-2900 (Telephone)
(713) 659-2908 (Facsimile)

*Counsel for Appellees Texas Gulf Fabricators, LLC, Brian G. Hendry, and Lester H. Smith*

61

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Brief of Appellees has been served on all counsel of record on the 4th day of November, 2015, by e-filing, e-mail, and U.S. Mail as follows:

George W. Gore
*ggore@goretexas.com*
THE GORE LAW FIRM
6200 Savoy, Suite 1150
Houston, Texas 77036
*Counsel for Appellants*

Gary M. Jewell
*gjewell@csj-law.com*
Adam L. Tepper
*atepper@csj-law.com*
CHRISTIAN, SMITH & JEWELL, L.L.P.
2302 Fannin, Suite 500
Houston, Texas 77002
*Counsel for Appellees Texas Gulf Energy, Inc.,*
*CS Bankers V, LLC, and Timothy Connolly*

*/s/ Cody W. Stafford*
Cody W. Stafford

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Tex. R. App. P. 9.4 because it contains 14,134 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4.

2.      This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using 14-point font with footnotes typed in 12-point font.

Dated: November 4, 2015.

*/s/ Cody W. Stafford*
Cody W. Stafford
*Counsel for Appellees Texas Gulf Fabricators, LLC, Brian G. Hendry, and Lester H. Smith*